### STATE OF CONNECTICUT *v.* LUIS ROQUE
### (10260)

HEALEY, SHEA, GRILLO, SPONZO and BIELUCH, Js.

Argued January 13—decision released May 17, 1983

*Paul T. Nowosadko,* law student intern, with whom was *Michael R. Sheldon,* for the appellant (defendant).

*Donald B. Caldwell,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. After a trial to the jury, the defendant was convicted of one count of rioting at a correctional institution in violation of General Statutes (Rev. to 1977) § 53a-179b.[1] This appeal followed.

---

[1] General Statutes (Rev. to 1977) § 53a-179b entitled "Rioting at correctional institution" provides: "(a) A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution.

"(b) Rioting at a correctional institution is a class B felony."

At the same trial, the jury also returned not guilty verdicts on three counts of assault in the second degree in violation of General Statutes § 53a-60 (a) (5). All four counts upon which the defendant was tried arose out of an incident at the Connecticut Correctional Institution at Somers on December 17, 1978.

That part of the information filed by the state which charged the violation of General Statutes § 53a-179b stated as follows: "DONALD B. CALDWELL, State's Attorney for the Judicial District of Tolland, accuses LOUIS [sic] ROQUE of Somers, Connecticut, of RIOTING AT CORRECTIONAL INSTITUTION and charges that at the Town of Somers, in said District, on or about the 17th day of December, 1978, the said LOUIS [sic] ROQUE did incite, connive, aid, abet, assist or take part in a disorder, disturbance, riot or other organized disobedience to the rules and regulations of such institution in violation of Section 53a-179b of the General Statutes."

Some time prior to trial the defendant filed and the court granted his motion for a bill of particulars which sought the following: "A. Place, date and time where the offense allegedly was committed. B. The manner or means by which the offense was allegedly committed giving the specific acts and conduct of the defendant." The state's bill of particulars directed to the first count[2] of the information which charged the violation of § 53a-179b was the following:

"A. The defendant committed the crime of Rioting at Correctional Institution on December 17, 1978, at about 11:15 a.m., in the West Mess Hall and adjoining hallway at Connecticut Correctional Institution, Somers, Connecticut.

"B. The defendant committed the crime of Rioting at a Correctional Institution by taking part in a disorder, disturbance or organized disobedience of the rules and regulations of the Institution. An inmate, Harper, commenced a disturbance in the mess hall by refusing to leave the hall when directed, shouting and

---

[2] The bill of particulars also responded to the other three counts of the information.

attacking corrections [sic] officers. The defendant along with other inmates joined the disturbance. The defendant fought with, assaulted, disobeyed and resisted correctional officers.''

The defendant filed a request to charge which included a recitation of the entire content of § 53a-179b and in which he requested a charge that the state had to prove that the disorder or disturbance was one that was organized (preplanned) by the participants. After the court's charge to the jury,[3] the only exception taken by the defendant was: "I would except to that portion of the charge in its entirety as relating to Section 53a-179b and also to the Court's decision not to include my request to charge as to that portion of the statute.''

---

[3] The court's instructions at that time in relevant part were:

"First of all, let's consider Count 1, rioting in correctional institution. That is Section 53a-179b of the Statutes, and I am going to read that statute in its entirety. The statute provides, 'A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution.'

"Now, you have heard the evidence, and it is up to you to decide whether or not, Number 1, there was any disturbance or disorder—those are the two things the State claims I think that actually occurred here—and, of course, whether or not this defendant participated in it to the extent provided in the statute, that is, that he aided, abetted, assisted, et cetera. I want to explain the statute a little more fully than that to you. Because of the wording there is a possibility you could get confused.

"Now, any strike, riot, disorder, or disturbance need not be organized. It may be either spontaneous or organized. The statute provides that only where we are dealing with a disobedience to the rules need that be organized as such. Now, the wording of the statute appears to equate organized disobedience in seriousness to the mere occurrence of a disorder, strike, disturbance, or riot, whether those things are organized or spontaneous, so you don't have to find this incident was planned out in advance or that it was all set up in advance and organized in order to find him guilty of participating in a riot or disturbance or disorder. But you must find, of course, that such riot, disturbance, or disorder took place, and you must find that he really did take part in it as required by the statute.''

During their deliberations, the jury requested "a rereading of the definition of 'riot.' Can we have that, please?" The court then reread General Statutes § 53a-179b and instructed them that they would "have to first find that there was indeed a disturbance or disorder . . . that you had to find it had been proven . . . that this defendant either incited, instigated, organized, connived at, caused, aided, assisted, or took part in any such disorder or disturbance."[4] At that time the defendant excepted saying: "I want to take exception to the second charge, the same as the first one, concerning 53a-179b."

---

[4] The court's instructions at this time were:

"The Court: Are you close enough to a verdict?

"Foreman of the Jury: At this point I would say that we are not, but I would request a rereading of the definition of 'riot.' Can we have that, please?

"The Court: I can reread the statute.

"Foreman of the Jury: Yes. Can you reread that, please.

"The Court: I instructed you on the charge as follows: That the State alleged that this defendant was guilty of violating Section 53a-179b of the Statutes, which provides as follows: 'A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution.'

"I then went on to explain that any strike, riot, disorder, or disturbance under this statute need not be organized but may be either spontaneous or organized, that only when the claim is made that there has been a disobedience to rules need there be an organized disobedience. I then went on to explain that the wording of the statute appears to equate organized disobedience in seriousness to the mere occurrence of a disorder, strike, disturbance, or a riot, whether it is organized or spontaneous. But I then instructed you you would have to first find that there was indeed a disturbance or disorder, as I believe those were the two words in the bill of particulars the State claimed had been violated here, and that, in fact, it had been proven beyond a reasonable doubt—that you had to find it had been proven beyond a reasonable doubt that this defendant either incited, instigated, organized, connived at, caused, aided, assisted, or took part in any such disorder or disturbance.

"Foreman of the Jury: O.K."

On appeal, the defendant claims that the court erred and violated his constitutional rights by instructing the jury that they might find him guilty of § 53a-179b under any one of nine theories of criminal liability set forth in that statute after the state's bill of particulars "precisely delineating ['taking part in'] . . . the specific statutory theory of liability upon which it would base its prosecution," the state thus limiting itself to "proving him guilty . . . under that specific theory of liability to the exclusion of all others." He claims that this statute is a "separable statute which is violated by any person who associates himself in any [one] of nine discrete, statutorily specified manners with any disorder, disturbance . . . [at] a Connecticut Correctional Institution." The state having thus limited itself to the "taking part in" manner, the defendant goes on to argue that the challenged instruction permitted the jury to find him guilty on one or more of the statutory theories of liability not contained in the bill of particulars. It follows, he claims, that because a defendant cannot be constitutionally convicted on the basis of "an uncharged statutory theory of liability," there is a reasonable possibility that the jury may have been misled by the court's instructions on the basis of "just such an uncharged statutory theory of liability [and] his conviction . . . must be reversed."

The defendant's brief concedes that the constitutional claims which he now makes were not properly preserved in the trial court for appellate review. He, however, argues for such review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), maintaining that the record adequately supports his claim of deprivation of fundamental "constitutional rights and a fair trial."

Initially, the state argues that this court should deny review of the errors asserted by the defendant on

appeal. In so doing, it points out that these claims were not raised by him in the trial court, and that the broad language of his exception to the charge on § 53a-179b could hardly have alerted the trial court to the claims of error made for the first time on appeal. It, therefore, claims that such errors cannot be reviewed under the doctrine of *State* v. *Evans,* supra.

In regard to the merits of the defendant's claim, the state, after reviewing the purpose of a bill of particulars, argues that it was responsive to the motion not only by setting forth the place, date and time where the offense took place but also in "stating that the defendant took part in the disorder, disturbance or organized disobedience and then stating some of the specific acts and conduct of the defendant." The state maintains that if the defendant wanted to limit the state further, he could have done so by a request in the original motion for the bill or a supplemental bill if he was not satisfied with the original bill of particulars. In addition, it claims that the bill as filed "adequately informed" the defendant of the crime charged and that "clearly" he was not subjected to "prejudicial surprise" at the trial. It points out that the record discloses no indication of surprise by the defendant as to the evidence offered at the trial by the state. It also notes that the only exception to the court's instructions addressed the state's obligation to prove that the disturbance or disorder had to be organized. Under the circumstances, including the motion for and the bill of particulars itself, the state argues that the court could not possibly have misled the jury by its instructions which were correct.

Concededly, the defendant did not raise below the claims he now asks us to review under *Evans.* Because, however, the claims he now raises generate issues of constitutional dimension, we find that they come within

one of the "exceptional circumstances" permitting our review under *Evans.* We refer to that circumstance spelled out in *Evans* which allows review where the record, as here, is sufficiently complete to consider the claims on the merits and where the claims involve a fundamental constitutional right. *State* v. *Evans,* supra, 70; see *State* v. *Godek,* 182 Conn. 353, 356, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981).

Central to the defendant's arguments on appeal is that General Statutes § 53a-179b is a "separable statute which is violated by any person who associates himself in any [one] of nine discrete, statutorily specified manners with any disorder, disturbance, strike or riot . . . or . . . other organized disobedience to the rules and regulations of a Connecticut Correctional Institution." These "nine discrete, statutorily specified manners" in this "separable statute" are, he argues, the nine verbs: "incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in . . . ."

The use of nine verbs, in what the defendant calls the "moving or proscriptive clause" of the statute with the word "or" before "takes part in," does show, he claims, with "substantial certainty" that the legislature intended the parts of the statute to be separate and not cumulative. Cf. *Sestito* v. *Groton,* 178 Conn. 520, 525, 423 A.2d 165 (1979). We do not agree.

Certain general rules of statutory construction should be set out here. "It is true that in the interpretation of statutes, the intent of the legislature is to be found not in what it meant to say, but in what it did say." *Gomeau* v. *Forrest,* 176 Conn. 523, 526, 409 A.2d 1006 (1979); *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978). A statute should be construed so that no word in it is treated as superfluous or insignificant. *Kulis* v.

*Moll,* 172 Conn. 104, 111, 374 A.2d 133 (1976). "Insofar as it is possible, the entire enactment is to be harmonized, each part made operative." *State* v. *Grant,* supra. As a general principle, words used in statutes "shall be construed according to the commonly approved usage of the language." General Statutes § 1-1(a); see *Rosnick* v. *Aetna Casualty & Surety Co.,* 172 Conn. 416, 422, 374 A.2d 1076 (1977). "In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." *Stoni* v. *Wasicki,* 179 Conn. 372, 376–77, 426 A.2d 774 (1979). "A statute is not to be interpreted to thwart its purpose." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 489, 400 A.2d 726 (1978); *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 31, 357 A.2d 498 (1975).

It is true that penal statutes are to be construed strictly and not extended by implication to create liability which no language of the act purports to create. *Nowak* v. *Nowak,* 175 Conn. 112, 125, 394 A.2d 716 (1978); see *State* v. *Cataudella,* 159 Conn. 544, 555, 271 A.2d 99 (1970). On the other hand, " '[t]he rule of strict construction does not require that the narrowest technical meaning be given to the words employed in a criminal statute in disregard of their context and in frustration of the obvious legislative intent.' " *State* v. *Faro,* 118 Conn. 267, 274, 171 A. 660 (1934), quoting *United States* v. *Corbett,* 215 U.S. 233, 242, 30 S. Ct. 81, 54 L. Ed. 173 (1909).

If we parse the defendant's claim of separability, it is clear that the nine verbs are listed seriatim in a single statutory clause, separated from each other only by commas and the disjunctive "or." He thus claims that this makes the "conclusion inescapable" that one can be convicted under § 53a-179b whenever his conduct

meets any one of the "nine verbal descriptions" set out in the "moving or proscriptive clause" of that statute.[5]

Initially, we note that while punctuation is a recognized aid to statutory construction, it is not conclusive. *State* v. *Dennis,* 150 Conn. 245, 248, 188 A.2d 65 (1963). Although the disjunctive "or" has often been construed as "and"; see *United States* v. *Fisk,* 70 U.S. (3 Wall.) 445, 447, 18 L. Ed. 243 (1866); *West Hartford* v. *Thomas D. Faulkner Co.,* 126 Conn. 206, 211, 10 A.2d 592 (1940); *Bordonaro* v. *Senk,* 109 Conn. 428, 430, 147 A. 136 (1929); we do not so construe the "or" just preceding "takes part in" in this statute.

This interpretation, however, does not aid the defendant. "Assistance in ascertaining the legislative intent is afforded by resort to the familiar maxim of noscitur a sociis. Through use of this aid the meaning of a word or a particular set of words in a statute may be indicated, controlled or made clear by the words with which it is associated, in a manner somewhat similar in application to the more familiar doctrine of in pari materia. 2A Sutherland, Statutory Construction, (4th ed. 1973) § 47.16 at 101." *Falcone* v. *Branker,* 135 N.J. Super. 137, 146–47, 342 A.2d 875 (1975). By the use of the words "incites," "instigates," "organizes," "connives at" and "causes," the statute makes those who commence, in the sense of plan, begin or start an occurrence proscribed by the second portion of the statute, whether organized or spontaneous, subject to conviction of a class B felony. In like manner, the statute, by use of the words "aids," "abets," "assists" or "takes part in," does the same to those who join in any such occurrence. In short, although nine separate

---

[5] On this appeal, we are not concerned with construing the latter portion of this statute which recites: "any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution." See *State* v. *Pascucci,* 164 Conn. 69, 316 A.2d 750 (1972).

verbs are used, their common meanings and their association with each other causes them to fall into two groups: those that cover the leaders or planners and those who follow them in the proscribed occurrence, whether it is organized or spontaneous. In *State* v. *Pascucci*, 164 Conn. 69, 71, 316 A.2d 750 (1972), we had occasion to consider such verbs as "pertaining to the bringing about" of such occurrences in a correctional institution. This legislative inclusion of all participants to proscribe the serious mischief to be prevented, be it by leaders or planners on the one hand or by followers on the other hand, is consistent with the common denominator in this statute of deterring all such occurrences at a correctional institution. This is consonant with the view that "[l]egislative words are not inert and derive vitality from the obvious purposes at which they are aimed. . . . This aid contemplates that where two or more words of analagous meaning are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations, and give color and expression to each other." *People* v. *Goldman,* 7 Ill. App. 3d 253, 255, 287 N.E.2d 177 (1972).

The nine verbs, therefore, are not nine separate statutorily proscribed methods of violating this statute. Rather, as we have demonstrated, they are verbs "pertaining to the bringing about"; see *State* v. *Pascucci,* supra; of any occurrence, spontaneous or organized, under the statute. The similarity and overlap in the common meaning of such words as "incites," "instigates," "organizes," "connives at" and "causes" on the one hand, and "aids," "abets," "assists" or "takes part in" on the other hand demonstrate this. As Justice Holmes put it in *Roschen* v. *Ward,* 279 U.S. 337, 339, 49 S. Ct. 336, 73 L. Ed. 722 (1929): "[T]here is no canon against using common sense in construing laws as saying what they obviously mean."

With this, we turn to the bill of particulars. A bill of particulars does not exist in a vacuum; it must be read with the information which the defendant asked be particularized. *State* v. *Coleman,* 167 Conn. 260, 268–69, 355 A.2d 11 (1974); see *State* v. *Ballas,* 180 Conn. 662, 664, 433 A.2d 989 (1980). " 'The office of a bill of particulars is to supply both the accused and the court *additional* information concerning an accusation that the defendant has committed an act or acts constituting a criminal offense.' (Emphasis added.) 41 Am. Jur. 2d, Indictments and Informations, § 163." *State* v. *Coleman,* supra, 269. If we consider the bill of particulars in conjunction with the information, "the test to be applied is as follows: '[If] the state's pleadings . . . informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty. . . .' (Citations omitted.) *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979)." *State* v. *Ballas,* supra, 664.

In this case, the information charged that the defendant "did incite, connive, aid, abet, assist or take part in a disorder." The bill of particulars, on the other hand, does not indicate that the defendant incited, organized, connived at or caused the occurrence. It does specify that an inmate named Harper *"commenced* the disturbance" and that the defendant, along with other inmates, *"joined"* it. (Emphasis added.) The bill also describes the defendant as "taking part in" this occurrence.

"The bill of particulars does not become part of the [information]. See 4 Wharton, Criminal Law and Procedure, § 1870. See generally 41 Am. Jur. 2d, Indict-

ments and Informations, §§ 163–165." *State* v. *Glass*, 107 R.I. 86, 92, 265 A.2d 324 (1970). It does, however, limit the state to proving that the defendant committed an offense "in substantially the manner described."[6] *State* v. *Ruiz*, 171 Conn. 264, 270, 368 A.2d 222 (1976); see *State* v. *DiLorenzo*, 138 Conn. 281, 284, 83 A.2d 479 (1951); *State* v. *Scott*, 80 Conn. 317, 321, 68 A. 258 (1907). Under our previous interpretation of the statute, therefore, the bill of particulars limited the state to proving that the defendant had joined in the incident by aiding, abetting, assisting or taking part in its occurrence.

The defendant does not point to any evidence that would warrant the jury's finding that he incited, instigated, organized, connived at or caused this disturbance. Our examination of the transcript shows that no such evidence was before the jury. He does, however, concede that "by his efforts to come to the aid of inmate Harper, [he] may have been found by his jury to have 'assisted' and/or 'aided' Harper." It follows from our interpretation of the statute that he could also have been found to have taken part in or abetted that disturbance. The words "aids," "assists," "abets" and "takes part in," in common parlance, all partake of the accessorial or auxiliary nature of the conduct of the defendant, in contrast to "incites," "instigates," "organizes," "connives at" or "causes," which all partake of the principal or primary nature of the conduct inherent in such activity. This may well explain why, at the trial, the defendant did not object to *any* evidence on the ground that it was outside the ambit of the pleadings. There is no real issue but that the defendant

---

[6] We note that there was no compliance with Practice Book § 833 which provides: "When any bill of particulars is ordered, an amended or substitute information shall be filed incorporating its provisions." The failure to do so, without objection by the defendant, under the circumstances of this case does not change our view of the disposition of this case.

thus knew the charge for which he was being tried. The transcript reveals that the defendant never claimed that he was surprised by the evidence presented by the state or that his defense was hampered some other way by any deficiency in the information or in the bill of particulars. If the defendant was not satisfied with the bill of particulars as filed, he could have asked for a further bill and an amended or substitute information. See, e.g., *Commonwealth* v. *Whitehead,* 379 Mass. 640, 649, 400 N.E.2d 821 (1980). He cannot be heard to complain that he was not aware of the state's accessorial theory under the circumstances. See generally *State* v. *Ballas,* supra, 665.

The defendant has not, as he must, demonstrated that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the state's pleadings. See *State* v. *Sumner,* supra, 168; *State* v. *Rafanello,* 151 Conn. 453, 457, 199 A.2d 13 (1964); *State* v. *Mola,* 128 Conn. 407, 410–11, 23 A.2d 126 (1941); 5 Wharton, Criminal Law and Procedure (Anderson) § 2056. "As the state's pleadings here informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty. *Russell* v. *United States,* 369 U.S. 749, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962); *United States* v. *Debrow,* 346 U.S. 374, 74 S. Ct. 113, 98 L. Ed. 92 (1953); *State* v. *Coleman,* [167 Conn. 260, 275, 355 A.2d 11 (1974)] (*Bogdanski, J.,* concurring); *State* v. *Beaulieu,* 164 Conn. 620, 625, 325 A.2d 263 (1973); see *State* v. *Ramos,* 176 Conn. 275, 277–78, 407 A.2d 952 (1978); *State* v. *Costello,* 62 Conn. 128, 130, 25 A. 477 (1892); cf. Wright, Federal Practice and Procedure § 125." *State* v. *Sumner,* supra, 168.

Finally, we turn to the challenged jury instructions. "A claimed constitutional error, raised for the first time on appeal, will be examined, if at all, not to ascertain whether the . . . instruction was undesirable, erroneous, or even universally condemned but rather whether when reviewed in the context of the entire trial it violated some right guaranteed to the defendant by the fourteenth amendment to the constitution of the United States; *Cupp* v. *Naughten,* 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); or article first, § 8 of the constitution of Connecticut." *State* v. *Kurvin,* 186 Conn. 555, 564–65, 442 A.2d 1327 (1982). The due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Griffin,* 175 Conn. 155, 162, 397 A.2d 89 (1978). " ' "If justice is to be done . . . it is of paramount importance that the court's instructions be clear, accurate, complete and comprehensible, particularly with respect to the essential elements of the alleged crime." *United States* v. *Clark,* 475 F.2d 240, 248 (2d Cir. [1973])' . . . ." *State* v. *Kurvin,* supra, 561. " 'Moreover, in reviewing jury instructions our task is also to view the charge itself as part of the whole trial.' *United States* v. *Park,* 421 U.S. 658, 674, 95 S. Ct. 1903, 44 L. Ed. 2d 489 (1975)." *State* v. *Kurvin,* supra, 563.

From what we have said, we have concluded that the defendant was not, as he claims, convicted on the basis of an uncharged statutory theory of criminal liability. See *Cole* v. *Arkansas,* 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948). On the contrary, he was convicted upon a constitutionally available theory of which he had notice, against which he was defended and upon which his jury was instructed. His attack on the challenged

jury instructions does not avail him. It is therefore unnecessary for us, in the absence of an unconstitutional conviction, to reach any question, as he urges, that it is "reasonably possible" his jury was misled by the court's instructions. See *State* v. *Ruiz,* supra, 273-74; *State* v. *Rose,* 169 Conn. 683, 687, 363 A.2d 1077 (1975).

There is no error.

In this opinion the other judges concurred.