STATE OF CONNECTICUT *v.* LAWRENCE FRANKO
(12189)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued March 11—decision released April 22, 1986

*John R. Gulash, Jr.,* and *Richard Emanuel,* with whom, on the brief, was *Neil Lieberthal,* for the appellant (defendant).

*Susann E. Gill,* deputy assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, and *Bruce Hudock,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue on this appeal is whether evidence of a sexual assault victim's prior virginity was properly excluded at the trial of her alleged assailant. After a trial to a jury, the defendant, Lawrence Franko, was convicted of sexual assault in the first degree, in violation of General Statutes § 53a-70 (a),[1] and sentenced to twenty years imprisonment. The defendant appeals from this judgment.

---

[1] "[General Statutes (Rev. to 1981)] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of sexual assault

The jury could reasonably have found the following facts. On the evening of June 3, 1982, the victim, an eighteen year old college student, accompanied two girlfriends to the Rock-It Cafe in Stamford. During the course of the evening, the victim consumed three or four alcoholic beverages and danced with several individuals, including the defendant. Shortly after 11 p.m., the victim left the cafe with the defendant to go for a ride on his motorcycle. The defendant drove to a deserted cemetery and stopped. When the victim got off the motorcycle and began to retreat from the defendant, he pursued her, threw her to the ground, and told her that there were "two ways [they] could [do] this." As the victim continued to resist, screaming, the defendant choked her until she blacked out. He then sexually assaulted her while she was unconscious.

After the victim had regained consciousness, the defendant drove her back to the cafe but threatened to kill her if she called the police. She immediately went to a nearby hospital, where she was examined by a physician. This examination revealed bruises on the victim's neck consistent with the application of pressure, and a small tear or laceration of the labia interna of her vagina. The victim subsequently notified police, who arrested the defendant several days later. The defendant admitted having had sexual intercourse with the victim, but claimed that she had consented to the act.

On appeal from the judgment against him, the defendant raises three claims of error. He claims that the trial court erred: (1) in excluding evidence of the victim's virginity prior to the alleged assault; (2) in instructing the jury that it could convict the defend-

---

in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

ant of sexual assault in the first degree if it found that he had compelled the victim by the threat of force against her; and (3) in refusing the defendant's request to charge the jury that sexual assault in the second degree was a lesser included offense of sexual assault in the first degree. We find no error.

I

The defendant first claims that the trial court erred when it prohibited him from asking the victim on cross-examination whether she had been a virgin at the time of the alleged assault. Prior to the introduction of any evidence in the case and again at the end of the state's direct examination of the victim, the defendant notified the court that he intended to inquire into this subject on cross-examination. The trial court ruled that such inquiry was barred by General Statutes § 54-86f,[2] commonly referred to as the Rape Victims Shield Law,

[2] "[General Statutes (Rev. to 1983)] Sec. 54-86f. ADMISSIBILITY OF EVIDENCE OF PRIOR SEXUAL CONDUCT. In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the prior sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her prior sexual conduct, or (3) evidence of prior sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied."

which limits the admissibility of evidence of a sexual assault victim's prior sexual conduct.

On appeal, the defendant attacks the trial court's ruling on two grounds. He argues first that General Statutes § 54-86f by its terms limits only evidence of a sexual assault victim's prior sexual activity, and not the victim's *lack* of prior sexual activity. Therefore, he claims, the testimony he sought to elicit concerning the victim's prior virginity was admissible because it fell outside the scope of the statute. Alternatively, he argues that, if this court interprets § 54-86f to apply to evidence of prior sexual inactivity, the excluded question was still admissible because it fell within one of the exceptions specifically provided in the statute.[3] The state disagrees with both of the defendant's contentions, arguing vigorously that § 54-86f restricts inquiry into all aspects of a victim's sexual history.

We need not today decide the extent of § 54-86f's reach because we conclude that the trial court's ruling may be sustained on an alternate ground advanced by the state. See *State* v. *Burge*, 195 Conn. 232, 250–51, 487 A.2d 532 (1985); *Kakadelis* v. *DeFabritis*, 191 Conn. 276, 279, 464 A.2d 57 (1983); *Cheshire* v. *McKenney*, 182 Conn. 253, 261, 438 A.2d 88 (1980). The evidence concerning the victim's prior virginity was properly excluded because the defendant failed to establish that this evidence was relevant to a material issue in the case.

The rules governing the determination of relevancy are well established. "[E]vidence is relevant only when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case." *State*

---

[3] Before the trial court, the defendant claimed that the testimony he sought to elicit was admissible under the second and fourth exceptions provided in § 54-86f, although it is arguable that the defendant's ensuing argument to the court encompassed the first exception as well. On appeal, the defendant has relied on the first and fourth exceptions.

v. *Talton,* 197 Conn. 280, 285, 497 A.2d 35 (1985); *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d 345 (1985). The trial court has broad discretion to exclude evidence whose logical nexus to a material fact or issue has not been established. *State* v. *Talton,* supra, 284; *State* v. *Johnson,* 190 Conn. 541, 551, 461 A.2d 981 (1983).

In the present case, the defendant claims that evidence of the victim's prior virginity was relevant to provide an alternative explanation for an injury she suffered during the act of sexual intercourse. The victim testified that, upon regaining consciousness on the night of the incident, she knew that she had been sexually assaulted because, inter alia, her vaginal area was sore. The physician who examined her later that night testified that she had a small tear or laceration in the labia interna of her vagina which was consistent with the application of force to the area. Since the defendant had admitted having sexual intercourse with the victim and the only issue was whether she had consented, the defendant argued to the trial court that evidence of the victim's prior virginity was crucial to provide an explanation for her vaginal injury consistent with consensual intercourse.[4] He claimed that "a first sexual encounter would, by its very nature, result in some vaginal tearing . . . [a]s opposed to an inference . . . that it would be attributed to a forced entry."

The defendant never, however, offered any evidence to support this conclusory assertion, although he was given ample opportunity to do so. The defendant made his initial request to raise this subject prior to the start

[4] Although the court did not specifically rule on the basis of relevancy, the fourth exception to § 54-86f permits evidence of an assault victim's prior sexual conduct when it is "so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights." Consequently, a good portion of the defendant's argument to the court concerned the relevancy of the proposed evidence.

of the state's case. Although this request was denied, the trial court permitted the defendant to renew his argument at the end of the victim's direct examination by the state, and even permitted the defendant to conduct a lengthy cross-examination of the treating physician in an attempt to establish the necessary causative link between the victim's prior sexual status and the injuries she received. Nevertheless, despite these multiple opportunities, the defendant totally failed to establish such a link. On the contrary, the only medical evidence offered on the issue established categorically that there was no relationship whatsoever between a woman's virginity and an injury of the type suffered by the victim.[5] In the face of the defendant's failure to establish the probative value of the proposed evidence, the trial court was acting well within its discretion in excluding it.

Our conclusion that the testimony the defendant sought to elicit was irrelevant equally defeats the defendant's alternate claim that the limitation on his cross-examination of the victim violated his rights under the federal and state constitutions to confront and cross-examine the witnesses against him.[6] The defendant does not contend that the trial court unduly restricted his overall cross-examination of the victim. Indeed, the length and scope of the defendant's actual cross-examination would make such a claim untenable. The defendant's sole constitutional claim on this issue is that his inability to inquire into the victim's prior sex-

[5] The defendant was able to establish through medical testimony that an injury of the type suffered by the victim can occur during consensual intercourse where there is an extreme disparity of size between the partners.

[6] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

ual status damaged his ability to establish a defense of consent. This argument misperceives the scope of a criminal defendant's right to confront and cross-examine witnesses against him. This right is not absolute; *Chambers* v. *Mississippi,* 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State* v. *Talton,* supra, 284; but may bow to "other legitimate interests in the criminal trial process." *Chambers* v. *Mississippi,* supra, 295; *State* v. *Vitale,* 197 Conn. 396, 401, 497 A.2d 956 (1985); *State* v. *Mastropetre,* 175 Conn. 512, 521, 400 A. 2d 276 (1978). Such an interest is the trial court's "right, indeed, duty, to exclude irrelevant evidence." *State* v. *Mastropetre,* supra, 521; *State* v. *Talton,* supra, 283–85; *State* v. *Randolph,* 190 Conn. 576, 594, 462 A.2d 1011 (1983); *State* v. *Johnson,* supra, 551; *State* v. *Gaynor,* 182 Conn. 501, 509 n.8, 438 A.2d 749 (1980). Since the defendant failed to establish that the testimony he sought to elicit was relevant to a material issue in the case, he cannot complain that his constitutional rights were violated when that testimony was excluded. Accordingly, the trial court did not err in prohibiting this inquiry.

II

The defendant next claims that the trial court unconstitutionally enlarged the offense with which he was charged when it instructed the jury that it could convict him of sexual assault in the first degree if it found that he had compelled the victim to engage in sexual intercourse *either* by the use of force against her, *or* by the threat of use of force. Although § 53a-70 (a) creates liability under both theories, the state in its information alleged that the defendant had violated the statute only by the use of force. The defendant claims that the trial court's instruction effectively permitted the jury to convict him on the basis of an uncharged theory of liability, violating his rights under the fifth,

sixth, and fourteenth[7] amendments to the United States constitution and under article first, § 8, of the Connecticut constitution.[8] The defendant concedes that he did not take exception to this charge or raise these claims at trial.[9] He contends that this claim is nevertheless reviewable on appeal under the second exception created by *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), because the "record adequately supports a claim that [he] has clearly been deprived of a fundamental constitutional right and a fair trial."[10] We find no constitutional violation.

---

[7] The fifth amendment to the United States constitution provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."

The fourteenth amendment to the United States constitution provides in relevant part: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[8] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be informed of the nature and cause of the accusation . . . ."

[9] The defendant excepted to what he claimed was the trial court's "finding of fact as to whether or not [the defendant's statement to the victim could] be interpreted to imply the threat of force," which the defendant characterized as an attempt to direct the verdict. He never, however, excepted on the ground that this instruction enlarged the offense.

[10] The defendant also argues that this claim is reviewable because it constitutes plain error. Practice Book § 3063. "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in

The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature of the charge against him "with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and . . . to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . ." *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979); *State* v. *Roque,* 190 Conn. 143, 154, 460 A.2d 26 (1983). Since compulsion by the use of force and compulsion by the threat of force are simply two methods of committing one offense; *State* v. *Secore,* 194 Conn. 692, 698, 485 A.2d 1280 (1984); the defendant's conviction under either theory of liability would bar subsequent prosecution for the same offense. Therefore, for the defendant to establish an infringement of these constitutional rights, he must demonstrate that the court's charge caused him unfair surprise or prejudiced the preparation of his defense. *State* v. *Roque,* supra, 156.

We conclude that the record does not support the defendant's claim that he was surprised by the disputed instruction or that this instruction prejudiced his defense in any way. During the prosecution of its case, the state presented evidence that the defendant threw the victim to the ground and, when she resisted, told her that there were "two ways [they] could [do] this." This statement could reasonably have been construed by the jury, under the circumstances surrounding the incident, as a threat that the victim would be harmed if she did not submit to the defendant's sexual advances. The defendant did not object to this testimony as outside the scope of the information. See *State* v. *Roque,* supra, 155. This failure to object, coupled with

the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). The error of which the defendant complains is not so obvious or so egregious as to constitute plain error.

the defendant's subsequent failure to except to the disputed instruction itself, negates his current claim of unfair surprise.

More important, there is nothing on the record to suggest that the defendant would have changed his defense in any way had the state included the "threat of force" theory of liability in the information. On the contrary, the defendant's entire defense was predicated on his assertion that the victim's participation in the sexual act was consensual, a defense which encompassed a claim of threat of force as well as a claim of use of force. The defendant's reliance on our holding in *State* v. *Belton,* 190 Conn. 496, 461 A.2d 973 (1983), is thus misplaced. In that case, the defendant had been charged with burglary in the first degree by *entering* a building unlawfully with the intent to commit a crime within. The trial court instructed that the jury could convict him if it found either that the defendant had entered unlawfully or that he had remained unlawfully in the building with the requisite intent. Since the focus of the defendant's defense had been to establish that he had entered the building lawfully, we held that the charge providing an alternative ground for conviction may well have prejudiced his defense. Unlike the defendant in *Belton,* the present defendant has pointed to no area, nor have we discerned any, in which his defense was prejudiced by inclusion of the theory of "threat of force" in the charge. Had the jury believed that the victim had consented to the sexual intercourse, the defendant would have been acquitted under either theory of liability. Consequently, the record does not support the defendant's claim that his rights under the sixth amendment and article first, § 8, were adversely implicated by the trial court's instruction.

For similar reasons, we find no violation of the defendant's constitutional rights to due process. Due process requires that a criminal defendant be given

notice of the specific charge against him and an opportunity to defend against that charge. *Cole* v. *Arkansas,* 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948).[11] Although the information alleged only that the defendant had violated the statute by the use of force against the victim, it is clear, as discussed earlier, that the state presented evidence sufficient to support a conviction under the alternate statutory theory of threat of force. The presentation of this evidence gave the defendant adequate notice that he was being accused under both theories of liability. The state could properly have moved during trial for permission to amend the information to conform with this additional proof. Practice Book § 624.[12] In the absence of prejudice to the defendant, the trial court would have been justified in permitting such an amendment without violating the defendant's rights to due process. *State* v. *Belton,* supra, 501 n.5; *State* v. *Wallace,* 181 Conn. 237, 239, 435 A.2d 20 (1980); *State* v. *Ruiz,* 171 Conn. 264, 269–70, 368 A.2d 222 (1976). We have already determined that the defendant's ability to present a defense was not prejudiced by the implicit expansion of the information. Accordingly, the record does not support the defendant's claim that his due process rights were violated.[13]

---

[11] It is clear that the trial court's instruction did not create a risk that the defendant would be convicted of a separate and distinct offense. *State* v. *Secore,* 194 Conn. 692, 698, 485 A.2d 1280 (1984); see *Cole* v. *Arkansas,* 333 U.S. 196, 200–201, 68 S. Ct. 514, 92 L. Ed. 644 (1948).

[12] "[Practice Book] Sec. 624. —— ——SUBSTANTIVE AMENDMENT AFTER COMMENCEMENT OF TRIAL

"After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information or indictment at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."

[13] In his brief, the defendant also claimed, without amplification, that his due process rights were violated because the court's charge created the "impermissible . . . risk" that he was convicted on less than proof beyond

We reiterate our disapproval of a trial court's reading of an entire statute when the defendant has been formally charged under only one section of that statute. *State* v. *Carter,* 189 Conn. 631, 645, 458 A.2d 379 (1983). Nevertheless, we conclude that the error of which the defendant complains is tantamount to a variance between the pleadings and the proof. In the absence of an exception, when sufficient evidence on the uncharged issue has been presented to justify its submission to the jury, such a variance does not rise to the level of a constitutional violation unless the record establishes a lack of proper notice or prejudice to the defendant. Since the defendant suffered neither lack of notice nor prejudice in preparing his defense, he cannot prevail on this claim of error.

## III

The defendant's final claim is that the trial court erred in refusing his request to charge that sexual assault in the second degree; General Statutes § 53a-71 (a) (2);[14] is a lesser included offense of sexual assault in the first degree. The trial court ruled that sexual assault in the second degree did not constitute a lesser included offense. The defendant excepted to this ruling, arguing that evidence that the victim had consumed alcohol on the evening of the incident, coupled with the defendant's testimony that she had also ingested cocaine, could have supported a jury conclusion that her unconsciousness had been self-induced,

---

a reasonable doubt of each essential element of the crime with which he was charged. Our finding that the evidence presented on the threat of force theory of liability was sufficient to justify a conviction, coupled with the trial court's clear instruction on reasonable doubt, disposes of this claim.

[14] At the time of the alleged assault, General Statutes (Rev. to 1981) § 53a-71 (a) (2) provided: "SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is . . . (2) mentally defective, mentally incapacitated or physically helpless."

and thus justified a conviction under § 53a-71 (a) (2). See *State* v. *Rodgers,* 198 Conn. 53, 60–62, 502 A.2d 360 (1985).

The law governing a criminal defendant's entitlement to a lesser included offense charge is well settled. Such an instruction is warranted only if four conditions are met: (1) an appropriate request has been filed by the defendant; (2) it is not possible to commit the greater offense without having first committed the lesser; (3) there is evidence justifying conviction of the lesser offense; and (4) the evidence on the elements differentiating the offenses is sufficiently in dispute to permit a consistent finding of innocent of the greater offense but guilty of the lesser. *State* v. *Castro,* 196 Conn. 421, 427, 493 A.2d 223 (1985); *State* v. *Jacobs,* 194 Conn. 119, 127–28 n.4, 479 A.2d 226 (1984), cert. denied, 469 U.S. 1190, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985); *State* v. *MacFarlane,* 188 Conn. 542, 547, 450 A.2d 374 (1982); *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).

The second condition of the *Whistnant* test has not been satisfied in this case because it is possible to commit sexual assault in the first degree without first having committed sexual assault in the second. To violate § 53a-71 (a) (2), sexual assault in the second degree, a person must engage in sexual intercourse with someone who is physically helpless or mentally incapacitated. To violate § 53a-70, sexual assault in the first degree, a person must compel another by force to engage in sexual intercourse. It is plainly possible to do the latter without first having done the former, and the defendant concedes as much.

The defendant argues, nonetheless, that because the evidence at trial warranted a charge of second degree sexual assault, the trial court's failure to give such a charge deprived him of his right to a fair trial under

the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. We are unpersuaded. We have rejected the constitutional claim advanced by the defendant on several occasions, most recently in *State* v. *McIntosh,* 199 Conn. 155, 158–60, 506 A.2d 104 (1986). See also *State* v. *Castro,* supra, 429; *State* v. *MacFarlane,* supra, 547–49. The defendant has proffered no persuasive reasons for a different resolution of the issue in this case.[15] The crime of sexual assault in the second degree is an offense separate and distinct from sexual assault in the first degree. A criminal defendant has no constitutional right to a jury instruction on a separate, uncharged crime. *State* v. *Vitale,* supra, 408; *State* v. *MacFarlane,* supra, 548–49. Since the crime of sexual assault in the second degree is not a lesser included offense of sexual assault in the first degree, the trial court did not err in refusing to give the requested instruction.

There is no error.

In this opinion the other judges concurred.

---

[15] The defendant cites several United States Supreme Court cases which hold that due process may require a lesser included offense instruction in capital cases. See *Spaziano* v. *Florida,* 468 U.S. 447, 456–57, 104 S. Ct. 3154, 82 L. Ed. 2d 340 (1984); *Hopper* v. *Evans,* 456 U.S. 605, 611, 102 S. Ct. 2049, 72 L. Ed. 2d 367 (1982); *Beck* v. *Alabama,* 447 U.S. 625, 637–38, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980). In none of these cases, however, was a claim made that the offense on which the defendant had requested an instruction was not in fact a lesser included offense of the offense charged. In addition, in all of these cases, the defendant faced the death penalty if convicted of the more serious offense. "[T]here is a significant constitutional difference between the death penalty and lesser punishments." *Beck* v. *Alabama,* supra, 637.