## STATE OF CONNECTICUT *v.* CIRO SCOGNAMIGLIO
### (12221)

HEALEY, SHEA, DANNEHY, CALLAHAN and QUINN, Js.

Argued October 10, 1986—decision released January 6, 1987

· *Randolph E. Richardson II* and *Steven M. Basche,* certified legal interns, with whom were *Todd D. Fernow* and, on the brief, *Michael R. Sheldon,* for the appellant (defendant).

*Mitchell M. Berger,* special assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's

attorney, and *Walter H. Scanlon,* chief assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Ciro Scognamiglio, was charged in two separate indictments with murder in violation of General Statutes § 53a-54a, and with felony murder in violation of General Statutes § 53a-54c.[1] The indictment for felony murder charged that the defendant, together with Michael Oczkowski, "did commit robbery, and in the course of and in furtherance of such robbery said participants or either one of them did cause the death of Jose Rodriguez, not a participant in said robbery . . . . " After a jury trial, the defendant was acquitted of murder, but convicted of felony murder and sentenced to a term of imprisonment.

The jury could reasonably have found the following relevant facts. On the evening of January 4, 1982, at about 10 p.m., the defendant and Oczkowski drove to South Main Street in Waterbury to obtain drugs. Oczkowski was operating an automobile owned by his father-in-law, while the defendant occupied the front passenger seat. When Oczkowski parked the car on

---

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

South Main Street near its intersection with West Liberty Street, the defendant was approached by the victim, Jose Rodriguez, and two other hispanic males. A conversation ensued between the defendant and Rodriguez during which Rodriguez handed the defendant a small glassine bag containing heroin from a bundle of similar bags that he was holding.

The defendant tasted the heroin, found it satisfactory, kept the bag, and asked Rodriguez for the additional bags. Rodriguez refused to comply with the defendant's request until he received payment. The defendant thereupon produced a handgun, pointed it out the passenger side window of the car, and told Rodriguez that he was going to "take it all." At the sight of the gun, Rodriguez turned and ran toward West Liberty Street. The defendant then leaned from the car window, aimed and fired one shot, striking Rodriguez in the back and killing him. Immediately, the automobile "peeled out," rapidly leaving the scene. Later that same evening, the defendant and Oczkowski were apprehended at the home of Oczkowski's in-laws in Waterbury.

Oczkowski[2] testified at the defendant's trial, as did other witnesses, that the defendant had shot the victim under circumstances similar to those outlined above. The defendant, on the other hand, testified that Oczkowski, after exchanging heated words with Rodriguez, had leaned from the driver's side of the automobile across the front seat, shooting Rodriguez from the passenger window of the car. The defendant testified, in effect, that no robbery had occurred and that he had merely been a spectator to an altercation between Oczkowski and the victim that had resulted in the victim's death.

---

[2] Oczkowski was also indicted for felony murder. His trial was severed from that of the defendant and he had not been tried at the time of the defendant's trial.

## I

The defendant first claims that the trial court unconstitutionally expanded the offense with which he was charged, when it instructed the jury that it could convict him of felony murder if it found that he or another participant in the alleged robbery caused the death of the victim "in the course of and in furtherance of [the robbery] *or of flight therefrom.*" (Emphasis added.) The governing statute, General Statutes § 53a-54c, creates criminal liability under both theories; the indictment by which the defendant was charged, however, contained only an allegation that the accused had violated the statute by causing the death of the victim "in the course of and in furtherance of" the robbery. There was no reference in the indictment to *flight.*

The defendant claims that the trial court's instruction allowed the jury to convict him on a theory of liability for which he was not indicted. He argues, therefore, that he had no notice of the charges against him in violation of his rights under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. The defendant failed to raise this claim at trial or to except to the trial court's charge. Moreover, he filed a written request that the trial court charge the jury on *flight.*[3] He contends, nevertheless, that this claim is reviewable on appeal because he has been denied a fundamental constitutional right and a fair trial. *State v. Evans,* 165 Conn. 61, 327 A.2d 576 (1973). We find no constitutional violation.

---

[3] The defendant requested the court to charge the jury as follows: "felony [murder] conviction: In order to convict the defendant of felony murder the state must prove that a murder was committed by the defendant and must prove beyond a reasonable doubt the defendant has committed the crime of robbery *or flight therefrom.*" (Emphasis added.)

"The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature of the charge against him 'with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and . . . to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . . ' *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979); *State* v. *Roque,* 190 Conn. 143, 154, 460 A.2d 26 (1983)." *State* v. *Franko,* 199 Conn. 481, 490, 508 A.2d 22 (1986); *State* v. *Couture,* 194 Conn. 530, 560, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). The killing of a nonparticipant "in the course of and in furtherance of [a robbery] or of flight therefrom" are simply two methods of committing the same crime. See *State* v. *Secore,* 194 Conn. 692, 697–98, 485 A.2d 1280 (1984); *State* v. *Couture,* supra; *State* v. *Wallace,* 181 Conn. 237, 239, 435 A.2d 20 (1980); *State* v. *Cofone,* 164 Conn. 162, 166, 319 A.2d 381 (1972); *State* v. *Edwards,* 163 Conn. 527, 532, 316 A.2d 387 (1972). The defendant's conviction under either theory would consequently bar a subsequent prosecution for the same offense. *State* v. *Franko,* supra. "Therefore, for the defendant to establish an infringement of these constitutional rights, he must demonstrate that the court's charge caused him unfair surprise or prejudiced the preparation of his defense. *State* v. *Roque,* supra, 156." *State* v. *Franko,* supra. We conclude that it did neither.

There is nothing in the record to indicate that the defendant would have altered his defense in any way if a theory of liability based on the killing of the victim "in the course of and in furtherance of . . . *flight*" (emphasis added) from the robbery had been included in the allegations of the indictment. His defense was predicated on his assertion that he had not been a participant

in the robbery. He testified that he had been at the scene only because he had accompanied Oczkowski to buy drugs, and that he was merely a passenger in the automobile, an innocent bystander, when Oczkowski shot the victim and fled from the scene. We are, therefore, unable to discern any way in which the defense of the accused was prejudiced by the trial court's instruction concerning the flight theory of liability. Under either theory on which the jury was instructed, if the defendant did not participate in the robbery, or facilitate the getaway, as he had testified, he would have been acquitted had he been believed by the jury. Further, the affirmative action of the defendant in submitting a written request that the trial court instruct the jury on the flight theory of liability negates any claim that he was unfairly surprised by the inclusion of such an instruction in the court's charge. See *State* v. *Franko,* supra, 490–91.

For similar reasons, we find no violation of the defendant's fourteenth amendment right to due process. "Due process requires that a criminal defendant be given notice of the specific charge against him and an opportunity to defend against that charge. *Cole* v. *Arkansas,* 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948)." *State* v. *Franko,* supra, 491–92. We have already determined that the defendant's ability to present a defense was not prejudiced by the trial court's expansion of the indictment, and it is impossible to find lack of notice when the defendant himself requested an instruction concerning *flight,* the very portion of the statute which he claims on appeal should not have been charged. The record simply does not support the defendant's claim that his due process rights were violated.

The defendant concedes, indeed argues forcefully in his brief, which was filed before our decision in *Franko,* that there was sufficient evidence presented at trial so

that it was reasonably possible that the jury could have convicted him of felony murder under the *flight* theory of liability as well as the theory charged in the indictment. We agree. Therefore, as we held in *State* v. *Franko,* supra, 493, "the error of which the defendant complains is tantamount to a variance between the pleadings and the proof. In the absence of an exception, when sufficient evidence of the uncharged issue has been presented to justify its submission to the jury, such a variance does not rise to the level of a constitutional violation unless the record establishes a lack of proper notice or prejudice to the defendant. Since the defendant suffered neither lack of notice nor prejudice in preparing his defense, he cannot prevail on this claim of error." See *State* v. *Dahlgren,* 200 Conn. 586, 595, 512 A.2d 906 (1986).

The defendant contends that, even if *Franko* is fatal to his claim that he was unconstitutionally convicted on an uncharged theory of liability, the trial court was without jurisdiction to try him under the flight theory of liability. We disagree.

At the time the defendant was prosecuted, it was necessary that crimes punishable by death or life imprisonment be charged by indictment. Conn. Const., art. I, § 8; General Statutes § 54-45 (b). Therefore, if causing the death of a nonparticipant "in the course of and in furtherance of" flight from a robbery is a different crime than causing the death "in the course of and in furtherance of" a robbery, the crime for which the defendant was indicted, the trial court would have been precluded from amending the indictment unless the defendant expressly consented. Practice Book § 624. We have already decided, however, that the language of § 53a-54c divides the statute not into two crimes, but into two methods of committing the same crime. *State* v. *Secore,* supra; *State* v. *Couture,* supra; *State* v. *Wallace,* supra; *State* v. *Cofone,* supra; *State* v. *Edwards,* supra.

The trial court had jurisdiction, therefore, of the offense of felony murder and could amend the indictment if no substantive rights of the defendant were prejudiced. We have already determined both that the expansion of the indictment did not prejudice the defendant's substantive rights because he had adequate notice of the alternate theory of liability charged by the court and that his ability to present a defense was not impaired. The trial court could, therefore, amend the indictment to conform the pleadings to the proof. *State* v. *Franko,* supra.

Moreover, the trial court may amend an indictment, even to the extent of charging a different or additional offense, with the express consent of the defendant. Practice Book § 624. In this case, the defendant filed a written request that the trial court instruct the jury on the flight theory of liability. The defendant's request is tantamount to his express consent to amend the indictment and charge on that ground. It seems a bit disingenuous for the defendant to claim the trial court committed error by instructing the jury on *flight* when he requested an instruction on that very issue. At least, where no constitutional rights are violated, when an accused requests in writing that an issue be submitted to the jury, he cannot, on appeal, claim error in its submission. *State* v. *Hinckley,* 198 Conn. 77, 81 n.2, 502 A.2d 388 (1985). Action induced by an appellant cannot ordinarily be a ground of error. *State* v. *Ross,* 189 Conn. 42, 47, 454 A.2d 266 (1983); *State* v. *Kish,* 186 Conn. 757, 769, 443 A.2d 1274 (1982); *State* v. *Cobbs,* 164 Conn. 402, 424, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112 (1973).

II

The defendant next claims that the trial court erred in its initial jury charge and a subsequently requested recharge by instructing the jury on three occasions that

it could find the defendant guilty of felony murder if it found beyond a reasonable doubt that he or another participant caused the death of the victim "in the course of *or* in furtherance of the robbery or of flight therefrom." (Emphasis added.) We agree.

In order for the defendant to have been convicted of felony murder, it must have been proven beyond a reasonable doubt that he or another participant in the robbery caused the death of the victim "in the course of *and* in furtherance of [the robbery] or of flight therefrom." (Emphasis added.) General Statutes § 53a-54c. The language last quoted constitutes but a single element of the crime of felony murder; it does not create alternative theories of criminal liability. It was error therefore for the trial court to charge in the disjunctive.

At the trial, however, the defendant neither requested an instruction on this aspect of the felony murder statute, nor did he take an exception to the misstatements in the court's charge concerning it. He claims on appeal, however, that the error was of constitutional dimension and requires reversal because it is reasonably possible that the challenged instruction misled the jury and allowed it to convict him without finding all the required elements of felony murder proven beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Because the defendant claims that he was deprived of a fundamental constitutional right and a fair trial, we will review his claim to determine whether it is adequately supported by the record. *State* v. *Evans,* supra, 70.

There is no question that the trial court's use of the disjunctive, rather than the conjunctive, in its discussion of the element of felony murder in question, was erroneous. The court, however, correctly instructed the jury concerning the same element on four occasions

using the conjunctive each time. In its initial instructions to the jury at the close of the evidence the trial court, in both its first and final explanations of the elements of felony murder, tracked the statute correctly using the conjunctive. It did, on one occasion during the course of the initial charge, use the disjunctive. The use of the word "or" on that occasion, however, was followed immediately by, "Now in the course of, well, it has its ordinary meaning, was it during the robbery, was it part of the robbery. *And* in the furtherance of the robbery, well, that means advancing or promoting an objective, help bring the robbery about."[4] (Emphasis added.) While ambiguous, the use of the conjunctive in connecting the definitions of "in the course of" and "in furtherance of" reduced the chance that the jury would misconstrue the preceding use of the disjunctive as creating alternate elements rather than an additional element for the crime of felony murder.

The day following its initial instructions, the trial court, at the jury's request, again explained the elements of the crimes involved in the two indictments. During its discussion of felony murder, the court tracked the statute correctly and again used the conjunctive in its first and final explanations of the elements of that crime. It did, however, between those two explanations, use the disjunctive "or" on two occasions when explaining the element in question. On one of those occasions, the disjunctive was followed by the definitions of "in the course of" and "in furtherance of" previously noted wherein the conjunctive was inserted between them.

We do not examine a challenged portion of a jury instruction in artificial isolation from the overall charge. *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88

---

[4] See *State* v. *Young,* 191 Conn. 636, 639–44, 469 A.2d 1189 (1983), for the correct definition of "in furtherance of."

L. Ed. 2d 795 (1986); *State* v. *Dolphin,* 195 Conn. 444, 451, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); *State* v. *Hines,* 187 Conn. 199, 206, 445 A.2d 314 (1982). "Rather, we review the entire charge to determine if, taken as a whole, the charge adequately guided the jury to a correct verdict. *State* v. *Hines,* supra. An error in the charge requires reversal only if, in the context of the whole, there is a reasonable possibility that the jury was misled in reaching its verdict." *State* v. *Fleming,* 198 Conn. 255, 268–69, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982).

Keeping in mind the number of correct explanations of the disputed element of felony murder, the ameliorating circumstances surrounding the incorrect references to the disjunctive, the placement of the correct explanation at the beginning and end of both the initial charge and the recharge, and the failure of the defendant to take an exception; *State* v. *Evans,* supra, 67; we are satisfied that the jury was adequately instructed on the elements of felony murder. We conclude that in the context of the entire charge there is no reasonable possibility that the jury was misled.

There is no error.

In this opinion the other justices concurred.