# IN RE JUVENILE APPEAL (84-7)* (2795)

DUPONT, C.P.J., SPALLONE and DALY, Js.

Argued October 3—decision released December 4, 1984

*John C. Wirzbicki,* for the appellant (mother of the minor children).

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Judith M. Earl,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (commissioner of the department of children and youth services).

*Anne R. Hoyt,* for the minor children.

DALY, J. The respondent in this action has appealed from the judgment terminating her parental rights in regard to her four year old daughter, E,[1] and her six year old daughter, M.

The trial court found that the children had been committed to the department of children and youth services (DCYS) from October 20, 1981,[2] (first commitment) until October 18, 1983, with the exception of a five month period from July 6, 1982, to December 21, 1982 (second commitment). The trial court further found that there was clear and convincing evidence that, since the time of the first commitment, the respondent, who is only able to read to a very limited degree, had failed to achieve any such degree of personal rehabilitation as would reasonably encourage the belief that at some future date she could assume a responsible position in the children's lives, and also that, by reason of continuing mental deficiency, she had been, and for such a period of time as would be foreseeable, would be unable to provide them with the care, guidance, and control necessary to their physical, educational, moral and emotional well-being. Hence the respondent's parental rights were terminated.

In her appeal, the respondent claims that the trial court erred (1) in taking judicial notice of the file in the commitment hearing which included allegations that she had abused her children, (2) in finding that the

---

[1] The father's parental rights were also terminated, but he has not appealed.

[2] A review of the file indicates that the actual date of the first commitment was October 7, 1981.

respondent had failed to achieve any such reasonable degree of rehabilitation as would reasonably encourage the belief that at some future time she could assume a responsible position in her children's lives when the respondent had complied with the requirements of an agreement entered into between her and DCYS, and (3) in terminating the parental rights of the respondent without making a finding as to whether there existed realistic prospects for the children in question to find adoptive homes.

Even if we assume, arguendo, that the trial court improperly took judicial notice of the file in the second commitment proceeding, there was independent evidence that the respondent had abused her children. A DCYS social worker was called to the New London police department and saw bruises on M's eye, cheek and throat. The social worker testified that M maintained that the respondent had hit her. Additionally, M's foster mother indicated at trial that M pointed out places to her where M had been struck by the respondent and also alleged that the respondent had thrown her from a toy wagon. Although the trial court did not mention the matter of these beatings in its memorandum of decision, the evidence about them was known to it. We conclude, therefore, that any impropriety in the taking of judicial notice of the same type of material was harmless error. See *State* v. *Boyd,* 178 Conn. 600, 604, 424 A.2d 279 (1979); *Anonymous* v. *Norton,* 168 Conn. 421, 429–30, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975).

There was evidence adduced at trial from a New London policewoman, a DCYS social worker, and a psychologist, Robert Meier, to satisfy the requirements of General Statutes § 17-43a (a), which provides in part: "The superior court upon hearing and notice . . . may grant such petition if it finds, upon clear and convincing evidence, that over an extended period of time . . .

(2) the parents have failed to achieve any such degree of personal rehabilitation as would reasonably encourage the belief that at some future date they could assume a responsible position in their child's life; or (3) the parents, by reason of continuing physical or mental deficiency have, and for such period of time as will be detrimental to the best interest of the child, will be unable to provide him with the care, guidance and control necessary to his physical, educational, moral and emotional well-being . . . ."

We have concluded that the evidence does support the adjudicatory portion of the termination order on either of the above grounds.

The respondent claims that the trial court must make a finding of adoptability before removing her as a parent. She relies on *In re Juvenile Appeal (83-BC),* 189 Conn. 66, 79, 454 A.2d 1262 (1983), which states that "[o]rdinarily the only purpose served by such a termination is to make a child available for adoption. . . . Unless there is a realistic prospect for adoption of T, it would make no sense to sever his existing tie to his mother and set him adrift as a permanent ward of the state." The referee in that case recommended that the decree terminating parental rights not enter until the petitioner had satisfied the court that T could be placed in adoption. The basis for the recommendation was that T was a three year old with severe developmental problems.

With respect to a finding of adoptability by the trial court, this court will not consider claimed error on the part of the trial court unless it appears that the question was distinctly raised at the trial and was ruled upon and decided by the court adversely to the appellant's claim. Practice Book § 3063; Holden & Daly, Connecticut Evidence (Sup. 1983) § 13, pp. 37–38. The respondent did not raise this issue at the trial court level.

Furthermore, *In re Juvenile Appeal (83-BC)*, supra, is distinguishable from this case in that the children here were normal, and the foster mother was willing to adopt them although she felt younger adoptive parents would be in their best interest.

There is no error.

In this opinion the other judges concurred.