IN RE SABA P.*
(5753)

SPALLONE, BIELUCH and STOUGHTON, Js.

Argued December 16, 1987—decision released March 8, 1988

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Conrad Ost Siefert,* for the appellant (respondent).

*Paul J. Bakulski,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Robert W. Garvey,* assistant attorney general, for the appellee (petitioner).

*Jefferson Hanna III,* for the minor child.

*Philip D. Tegeler* and *Shelly Geballe* filed a brief for the Connecticut Civil Liberties Union Foundation, as amicus curiae.

SPALLONE, J. The respondent appeals from the judgment of the trial court terminating her parental rights, claiming as error (1) that the trial court misapplied the time requirements of General Statutes § 17-43a, and (2) that the "extended period of time" requirement of General Statutes § 17-43a (b) is unconstitutionally vague.

On May 8, 1986, the petitioner, the commissioner of the department of children and youth services (DCYS), filed a petition to terminate the parental rights of Saba's parents. The petition was subsequently amended to reflect that the father was deceased. The petition alleged that it was in Saba's best interest to terminate her mother's parental rights because: (1) the child had been abandoned by the mother in the sense that she had failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child within the meaning of General Statutes § 17-43a (b) (1); (2) the child had been found in a prior proceeding to have been neglected or uncared for, and the mother has failed to achieve such degree of personal rehabili-

tation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child within the meaning of General Statutes § 17-43a (b) (2); (3) the child had been denied by reason of act or acts of commission or omission the care, guidance or control necessary for her physical, educational, moral or emotional well-being within the meaning of General Statutes § 17-43a (b) (3); and (4) there is no ongoing parent-child relationship, as defined by General Statutes § 17-43a (b) (4).

A trial was held during which evidence was introduced to support the following facts. On April 11, 1985, the child Saba, who was born on October 2, 1980, was voluntarily placed in foster care where she still remains. On December 10, 1985, Saba was adjudicated an uncared for child and committed to DCYS.

Saba's mother suffers from a long history of mental illness which has been diagnosed as chronic schizophrenia, undifferentiated. She has been admitted to the Norwich Hospital as an in-patient on eight separate occasions over a period of twenty years for periods ranging from a few days to almost seven years. She was admitted three times during 1985 and 1986 for periods totalling seven months. Her prognosis is "poor" and Saba would be clearly at risk if placed in her care. Further, it would be "several years, if ever," before the mother could safely care for Saba. Also, there was a "probability" of further future admission of the mother to Norwich Hospital. At the time of trial, the mother was receiving heavy doses of lithium carbonate, approximately 900 milligrams per day. The mother talks and screams to herself and is prone to violent behavior. The mother visited Saba four times during the period from February of 1986, to the time of trial. These visits were initiated and encouraged by DCYS. The visits failed in their purpose of establishing a positive bond between

mother and child because the mother, instead of relating to the child, used the visitation time to talk about subjects of apparently greater interest to her such as social security benefits and other personal items not relevant to her parental relationship with her daughter.

As far as Saba is concerned, she recognizes the respondent as her mother but has no feelings which reflect any emotional ties to her. Saba has developed a warm and loving relationship with her foster parents. The trial court expressly found that the "emotional ties between Saba and her foster parents are significant, healthy and clearly the best thing that has happened to Saba in her young life." Saba is at a critical age and has gone through a violent and unstable history. The trial court found that it was in the best interest of Saba to terminate the respondent's parental rights and expressly stated that "Saba's situation cries out for permanency."

Thereupon, the court found that, by clear and convincing evidence, three grounds existed to justify the termination of the respondent's parental rights. The court found that the grounds had existed for more than one year and also found that it would be in the best interest of the child to terminate the mother's parental rights. The trial court specifically found that Saba had been "abandoned" under General Statutes § 17-43a (b) (1); had been denied, by reason of respondent's omission, the care, guidance or control necessary for her physical, educational, moral or emotional well-being under General Statutes § 17-43a (b) (3); and that "no ongoing parent-child relationship" existed under General Statutes § 17-43a (b) (4). The respondent has appealed.

We hold, initially, that the only claim of error properly before this court is the respondent's first claim of error, i.e., that the trial court misapplied the time

requirements of General Statutes § 17-43a.[1] We will not consider the respondent's second claim of error because it was not raised in the trial court. Practice Book § 4185; *In re Juvenile Appeal (84-7),* 3 Conn. App. 30, 33, 484 A.2d 472 (1984).

General Statutes § 17-43a (b) provides that the court may terminate parental rights if it finds that "over an extended period of time, which . . . shall not be less than one year," at least one of the four statutory grounds for termination exists. Since the grounds are listed in the disjunctive, the court need find only one ground to grant the petition. *In re Juvenile Appeal (84–BC),* 194 Conn. 252, 258, 479 A.2d 1204 (1984).

The respondent's argument is based upon the premise that the court, in making a finding as to whether the grounds for termination have been in existence for not less than one year, is limited to the date of commitment as the starting point for measuring the one year requirement. We disagree.

Although the respondent, DCYS and the trial court speak in terms of the year commencing at a particular date, we do not determine the statutory year as legally requiring any fixed starting date. The statutory requirement is, simply that, at the time of the adjudication, statutory grounds exist for the termination of parental rights, and that those grounds must have existed for not less than one year. The statute does not say "one year from the date of placement" or "one year from the date of commitment." It requires only that the ground exist for not less than one year. This is so regardless of the status of the child. The child may be in placement, in commitment or still at home being

---

[1] We will only consider this claim of error as it relates to the amicus curiae brief filed by the Connecticut Civil Liberties Union. We granted permission for an amicus brief limited solely to the issues before us which were properly raised by the respondent. Any other issues raised in the amicus brief fall outside such limitation.

cared for by grandparents, siblings, other relatives or strangers and may at the same time be subject to parental behavior amounting to grounds for termination of parental rights.

We acknowledge that numerous cases involving coterminous petitions have been brought and termination of parental rights have been sustained where the "waiting period" was traced from placement in foster care not the date of commitment. See, e.g., *In re Theresa S.*, 196 Conn. 18, 491 A.2d 355 (1985); *In re Nicolina T.*, 9 Conn. App. 598, 520 A.2d 639 (1987); *In re Christine F.*, 6 Conn. App. 360, 505 A.2d 734 (1986); *In re Juvenile Appeal (85–3)*, 3 Conn. App. 194, 485 A.2d 1369 (1985).

We do not believe, however, that a "waiting period" is a requirement of the statute. We hold that the one-year requirement is a minimum period of time during which the grounds for termination must exist. Whether the grounds for termination exist for not less than one year is a question of fact to be determined by the court from the facts and circumstances in any given case. Our review of the record in this case reveals ample support for the trial court's finding that the grounds for termination in this case were in existence for not less than one year.

There is no error.

In this opinion, STOUGHTON, J., concurs.

BIELUCH, J., dissenting. I respectfully disagree with the conclusion of the majority opinion that the record in this case amply supports the trial court's finding that the grounds for termination of the respondent's parental rights were in existence for not less than one year.

Saba was born to Janina and Marion on October 2, 1980. In April of 1985, the mother separated from her

husband, taking Saba with her. An older brother, Arthur, then 23 years of age, became concerned about Saba's care because of the mother's mental illness. Since he could not make suitable child care arrangements for her, he wished her placed voluntarily through DCYS. The parents gave their written consent to this. On April 11, 1985, Saba was placed in a foster home. She was later committed to DCYS on December 10, 1985, after adjudication as an uncared for child. A petition requesting the termination of parental rights was withdrawn at that time to allow the brother the opportunity to explore the possibility of becoming her caretaker.

Upon the brother's later suggestion that it would be in the best interests of Saba to be freed for adoption, DCYS, on May 13, 1986, filed a petition to terminate the parental rights of the parents. Jurisdiction for the petition was based on General Statutes § 17-43a (e).[1] The grounds alleged were those specified in § 17-43a (b) (1), (2), (3) and (4).[2] The petition contained two fur-

---

[1] This appears to have been in error. General Statutes § 17-43a (e) provides in relevant part: "Any petition brought by the commissioner of children and youth services to the superior court, pursuant to subsection (a) of section 46b-129, may be accompanied by a petition for termination of parental rights filed in accordance with this section with respect to such child, notwithstanding that such child has not been committed to the commissioner of children and youth services."

Saba had previously been adjudicated an uncared for child and committed to DCYS under § 46b-129 (a). The jurisdictional statement should properly have been based on General Statutes § 17-43a (a) through (d), providing for termination of parental rights of a child previously committed to DCYS.

[2] General Statutes § 17-43a (b) provides in relevant part: "(b) The superior court upon hearing and notice, as provided in sections 45-61d and 45-61f, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year: (1) The child has been abandoned by the parent

ther allegations relating to the statutory time requirement for termination of parental rights: (1) that the stated reasons had existed for not less than one year; and (2) that a waiver of the one year requirement would be in the best interests of the child.[3]

On June 22, 1986, the child's father died of cancer. Because of this, the petition was amended at the commencement of the hearing to delete that portion which sought to terminate the parental rights of the father. The hearings were held on September 3 and 23, 1986, after which the court filed its memorandum of decision.

In its memorandum, the court initially considered the one year requirement of § 17-43a (b). The court acknowledged that the standard of proof required for a waiver of the time requirement under § 17-43a (c) was not clear, but concluded, "in any event, the petitioner has not proved by even a preponderance of the evidence that such a waiver is necessary." Because of the one

---

in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; or (2) the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; or (3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child."

[3] General Statutes § 17-43a (c) provides: "The court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child."

year requirement, therefore, the court denied the petition as to the allegation under § 17-43a (b) (2), since that period had not expired after Saba's adjudication as an uncared for child on December 10, 1985. The court did, however, find that the remaining three statutory grounds alleged met the one year threshold limitation because the original petition of May 13, 1986, and its amendment on September 3, 1986, to exclude the father because of his intervening death, were filed more than one year from the voluntary placement of Saba on "April 1, 1985."[4] It thereafter concluded that these grounds were established by the petitioner upon clear and convincing proof.

The court found that the mother was confined at Norwich Hospital on eight separate occasions over the previous twenty years for "chronic schizophrenia, undifferentiated." During the period of Saba's voluntary placement in foster care, the mother was an inpatient at the hospital in April and December, 1985. Subsequent to Saba's adjudication as an uncared for child on December 10, 1985, the mother was hospitalized in June of 1986. There was a probability of a ninth, or even a tenth, admission to a psychiatric hospital.

A psychologist testifying for DCYS maintained that Saba was at risk of physical injury from her mother, but a medical doctor called as a witness by the mother found that the mother was not prone to violence and was not a danger to her child or to herself. The medical doctor expressed the opinion that the child's reunion would possibly be beneficial to the mother's attempt to stabilize her psychiatric condition. Without concluding further on this conflicting testimony, the court observed that the medical doctor had made no evaluation of Saba and had offered no opinion as to the effect

[4] This date is in error. The record discloses that the voluntary placement of Saba by her parents took place on April 11, 1985.

on Saba of a return to her mother. The court did find, however, that the mother visited her child during foster care on several occasions, "but, to say the least, these visits have been less than successful."

The trial court found that for the period commencing April 1, 1985, to the time of the hearing, Saba had been abandoned by her mother under the provisions of § 17-43a (b) (1) "in that Janina P. has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . . [even though] that failure on the part of Saba's mother has been occasioned, at least in part, by [the] mother's psychiatric illness."

The court found further ground for termination of Janina's parental rights under § 17-43a (b) (3) in that Saba had been denied the care, guidance or control necessary for her physical, educational, moral or emotional well-being. The court observed in this regard that Saba was responding favorably to the removal from the previous home environment provided by her mother.

Finally, the court found proven the remaining ground for termination of Janina's parental rights as set forth in § 17-43a (b) (4) because there was no ongoing parent-child relationship. "[A]t least in part because of her schizophrenia, [the mother] has not met on a day to day basis, or even on an occasional basis, the physical, educational, moral and emotional needs of the child. . . . [T]o allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to Saba's best interest."

In reviewing its ultimate findings under § 17-43a (d),[5] the court concluded: "There is no question that [the]

---

[5] General Statutes § 17-43a (d) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered

mother might have done better at maintaining a relationship with Saba if she were not severely handicapped by her emotional disability . . . [but] it is Saba's best interests which are at issue here and not Janina's. Saba's situation cries out for permanency, and it is therefore found, by clear and convincing proof, that the parental rights of Janina P. should be terminated in her daughter Saba.''

In response to the petitioner's motion for articulation, the trial court made the following supplementary findings: (1) "[W]ith respect to the ground for termination of parental rights found in Connecticut General Statutes section 17-43a (b) (2) (i.e., 'failure to rehabilitate'), the one year 'waiting period' is calculated from the date of adjudication of the child as neglected or uncared for in the prior proceeding in this case, specifically December 10, 1985. . . . (2) [W]ith respect to the other three grounds in the petition for termination of parental rights (i.e., 'abandonment,' 'acts of parental commission or omission,' and 'no parent-child rela-

or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (3) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (4) the age of the child; (5) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonble act or conduct of the other parent of the child, or the unreasonble act of any other person or by the economic circumstances of the parent.''

tionship') the one-year 'waiting period' was calculated from April 1, 1985, the date of voluntary placement of the child in foster care. . . . (3) [T]here was no evidence before the court that the child's situation was such that any significant difference in the welfare of the child would occur if the hearing in this case were heard three months later, in December instead of September."

There are two claims raised on appeal: (1) the court did not properly measure the one year period under § 17-43a (b), and (2) the time requirement is unconstitutionally vague. Since the constitutional question was not raised below, we do not consider it. "The general rule against considering claims not raised at trial, Practice Book [§ 4185] applies also to constitutional issues . . . . 'Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court.' *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973)." (Citations omitted.) *Burritt Mutual Savings Bank of New Britain* v. *Tucker,* 183 Conn. 369, 377, 439 A.2d 396 (1981). There is nothing in the record to bring the respondent within any exception to this rule. *State* v. *Evans,* supra, 69–70.

The respondent argues that the period of time required to establish any of the four grounds for termination of parental rights specified in § 17-43a (1), (2), (3) and (4), is "an extended period of time," but not less than one year. The commencement of this period, therefore, must be measured from the inception or beginning of the alleged ground, and not from the voluntary placement of Saba by her parents in a foster home. With that I would agree. I would disagree, however, with the mother's claim that the required time for the grounds alleged in § 17-43a (b) (1), (3) and (4)

and found proven here must necessarily be marked from the legal commitment as an uncared for child on December 10, 1985.

"The word 'period' as applied to time carries with it the idea of the separation of a designated interval of time from the flow of time in general." *Van Dresser* v. *Firlings,* 305 Mass. 51, 54, 24 N.E.2d 969 (1940). There must be a beginning and an ending in the measuring of an extended period of time of not less than one year under § 17-43a (b). The ending would necessarily be coterminous with the trial on a petition brought thereunder. The beginning must be fixed by the date of origin of the specific ground relied upon under subsections (1), (3) or (4) of § 17-43a (b).

The voluntary beneficent act of placing Saba in a foster home under the guidance and direction of DCYS cannot by its own facts be considered as evidence of any one of these three grounds for termination of parental rights. It was not an act of abandonment of Saba under § 17-43a (b) (1); it was not a denial, by parental act of commission or omission, of the care, guidance or control necessary for Saba's physical, educational, moral or emotional well-being under § 17-43a (b) (3); nor was it the termination of the parent-child relationship under § 17-43a (b) (4); all as found by the trial court. Not being evidence of any of these grounds for the termination of parental rights, the voluntary placement of Saba in a foster home cannot mark the beginning of the "extended period of time" required to be measured for at least one year as a condition precedent to the granting of a petition for such termination of Janina's parental rights.

Saba's commitment to DCYS on December 10, 1985, following her adjudication as an uncared for child under General Statutes § 46b-129, while probative of the time requirement under § 17-43a (b), does not necessarily

fix the beginning of the extended period of time in all cases. An earlier date may be established by evidence relevant to any of the statutory grounds for termination of parental rights under the law. A review of all statutes relating to the termination of parental rights supports this position.

The petition for the termination of Janina's parental rights was filed on the judicial department form JD-JM-40 Rev. 2-85. The identification of this form indicates that it was prepared for use in proceedings under General Statutes §§ 17-43a and 45-61c. The jurisdictional statement provided on this form relates to petitions under the following circumstances: (1) termination under § 17-43a where child previously committed to DCYS; (2) termination of parental rights under § 17-43a (e) where child not previously committed to DCYS; and (3) transfer from probate court under § 45-61c (g). As noted earlier, the petition in this case was erroneously brought under § 17-43a (e), instead of pursuant to § 17-43a after a prior commitment of Saba to DCYS. My earlier review of the law related to a petition filed under § 17-43a after a prior commitment to the custody of DCYS under § 46b-129 as an uncared for child, the factual situation in this case.

Section 17-43a (e) provides that any petition brought by DCYS pursuant to § 46b-129 for the commitment of a neglected, uncared-for or dependent child may be accompanied by a petition for termination of parental rights filed under § 17-43a "notwithstanding that such child has not been committed to the commissioner of children and youth services." Such a provision for the filing of simultaneous petitions excludes the possibility that a commitment under § 46b-129 must mark the beginning of the "extended period of time" required by § 17-43a (b).

Similarly, the statutory provisions for the transfer of petitions to terminate parental rights from the courts of probate to the superior court exclude the possibility that a commitment under § 46b-129 must fix the beginning of the "extended period of time" required by § 17-43a (b). General Statutes § 45-61c (a) permits the filing in a court of probate of a petition to terminate parental rights. Section 45-61c (g) authorizes the transfer of such a petition to the superior court. Whether heard in the court of probate, or on transfer in the superior court, such a petition would not be conditional upon a prior commitment of the child to DCYS as an uncared for child. Section 45-61f (f) (1), (2) and (3)[6] provide the same grounds for termination of parental rights as § 17-43a (b) (1), (3) and (4), respectively. Missing only is the ground provided in § 17-43a (b) (2), relating to

---

[6] General Statutes § 45-61f (f) provides in relevant part: "At the adjourned hearing or at the initial hearing where no investigation and report has been requested, the court may approve the petition terminating the parental rights and may appoint a guardian of the person of the child, or if the petitioner requests, the court may appoint a statutory parent, if it finds, upon clear and convincing evidence that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time which, except as provided in subsection (g) of this section, shall not be less than one year: (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; or (2) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (3) there is no ongoing parent child relationship which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of the parent child relationship would be detrimental to the best interests of the child."

a child previously committed to DCYS as uncared for, since a petition under § 45-61f (f) in the probate court is independent of and unrelated to a prior commitment to the custody of DCYS under § 46b-129. The required "extended period of time" under § 45-61f (f), which like § 17-43a (b), "shall not be less than one year," therefore, cannot be measured from a commitment to the custody of DCYS under § 46b-129.

I agree with the majority in its conclusion that whether the grounds for termination exist for an extended period of not less than one year is a factual determination to be made on a case by case basis. I disagree, however, with their conclusion that the record supports the trial court's finding that the alleged grounds for the termination of Janina's parental rights of Saba existed for not less than one year. First, the court did not factually establish the beginning date of each ground for the measurement of the required period of not less than one year. Second, the court terminated the mother's parental rights because of her chronic schizophrenia, rather than upon a finding that her mental illness manifested itself in conduct demonstrative of an inability to care for her child. The court focused on Janina's status as a mentally ill person, rather than upon her conduct and relationship to Saba. See *In re Nicolina T.*, 9 Conn. App. 598, 607, 520 A.2d 639 (1987).

For these reasons, I dissent.