IN RE RAFAEL A.*
(6290)

DALY, O'CONNELL and FOTI, Js.

*In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued April 14—decision released August 23, 1988

*Joan C. Goldenthal,* special public defender, with whom, on the brief, was *Sally A. King,* for the appellant (respondent).

*Bruce A. Tonkonow,* state advocate, for the appellee (petitioner).

DALY, J. The respondent was adjudicated a delinquent child following the trial court's finding that he had committed the crimes of larceny in the fourth degree in violation of General Statutes § 53a-125 and breach of the peace in violation of General Statutes § 53a-181 while he was on probation. The respondent appeals claiming that the trial court erred (1) in concluding that he had committed larceny by receiving stolen property when he was charged in the petition with unlawfully taking property,[1] (2) in improperly

---

[1] Section 53a-119 provides: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."

Section 53a-119 (8) provides in part: "A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen  . . . ."

restricting cross-examination of the complainant on the breach of the peace charge, and (3) in concluding that there was sufficient evidence that he had violated the conditions of his probation. We find no error.

The trial court could reasonably have found the following facts. On October 1, 1986, the respondent, who was then fifteen years old, was ordered to live at the Altobello Children and Youth Center in Meriden, a state owned psychiatric hospital for adolescents, pursuant to a prior delinquency finding and as a condition of probation issued by the Superior Court for Juvenile Matters. The probation period was to last until April 30, 1987. The breach of the peace charge arose on December 4, 1986, when Keith McCarthy, a staff member at Altobello, reported that the respondent struck him three to four times when the respondent was told to return to his room. McCarthy testified that, although he made a statement to the police, he could not recall whether he had ever filed a staff member incident report.[2] Subsequent to this incident, the respondent was released from Altobello into the custody of his parents.

On March 11, 1987, at approximately 3 p.m., a West Hartford detective stopped a moped on New Park Avenue in the vicinity of Merrill Street. The respondent was a passenger on the moped. On the seat between the operator of the moped and the respondent, the detective found a video cassette recorder and a cable converter box which had been covered by a jacket or a shirt. A radio, tapes and other items were discovered in a white plastic bag hanging from the handle bars. It was later determined that these items had been taken that same day from a residence on Almeda Avenue in West Hartford.

[2] The respondent subpoenaed the personnel file of the complainant and found no staff member incident report pertaining to this incident.

## I

The respondent's first claim is that he was adjudicated a delinquent for possession of stolen property and not for the unlawful taking of property as set forth in the petition dated March 12, 1987. The petition filed by the state alleged "Violation of C.G.S. Section 53a-125 (Larceny 4th) in that on 3-11-87 he unlawfully took the property of another in West Hartford, value in excess of $500, with the intent to deprive the owner of the use thereof." The respondent claims that his defense was prejudiced, as he had no notice that he could be subjected to adjudication for the receipt or possession of stolen property. We find no error.

The provisions of both the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature of the charge against him " ' "with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise . . . ." ' " *State* v. *Scognamiglio,* 202 Conn. 18, 22, 519 A.2d 607 (1987), quoting *State* v. *Franko,* 199 Conn. 481, 490, 508 A.2d 22 (1986); see also *State* v. *Trujillo,* 12 Conn. App. 320, 326, 531 A.2d 142 (1987). In order " 'for the defendant to establish an infringement of these constitutional rights, he must demonstrate that the court's charge caused him unfair surprise or prejudiced the preparation of his defense. *State* v. *Roque,* [190 Conn. 143, 156, 460 A.2d 26 (1983)].' " *State* v. *Scognamiglio,* supra.

The respondent was charged with violating General Statutes § 53a-125 in that he unlawfully took the property of another. Under § 53a-125, a person is guilty of larceny in the fourth degree when he commits larceny as defined in General Statutes § 53a-119 and the value of the property or service exceeds $500. Section

53a-119 defines larceny; see footnote 1, supra; and delineates thirteen methods by which larceny can be committed.[3] In listing the thirteen methods of committing larceny, the statute specifically does not distinguish whether they fall under the ambit of "wrongfully taking," "obtaining" or "withholding." One of the thirteen cited methods of committing larceny is by receiving stolen property. General Statutes § 53a-119 (8). Accordingly, proof of receipt of stolen property is sufficient proof of larceny in the fourth degree, regardless of whether the defendant is charged with wrongfully taking, or obtaining or withholding the property from the owner. Under the former statutory scheme, larceny and receipt of stolen property were treated in separate criminal statutes. An information which charged a defendant with larceny was held to be insufficient to apprise a person of the possibility of a conviction for receiving stolen property. *State* v. *Carbone,* 172 Conn. 242, 258, 374 A.2d 215, cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977). As our Supreme Court noted in *Carbone,* that defect is cured by § 53a-119, which specifically includes receiving stolen property as a type of larceny. Id., 258 n.8.

In addition, the trial court could reasonably have inferred a criminal connection with the property from the respondent's possession of it shortly after it was stolen. " '[T]he possession of property recently stolen, if unexplained and standing alone or without other facts pointing to a contrary conclusion, will justify the trier in drawing an inference that the possessor stole the property . . . .' *State* v. *Palkimas,* 153 Conn. 555, 558–59, 219 A.2d 220 (1966). 'In other words, the circumstantial evidence of possession of recently stolen property raises a permissible inference of criminal con-

---

[3] The crime of larceny is not limited to commission as set forth in any of these stated methods. See General Statutes § 53a-119.

nection with the property . . . .' Id., 559." *State* v. *Liscio,* 9 Conn. App. 121, 127, 516 A.2d 1366 (1986), cert. denied, 202 Conn. 803, 519 A.2d 1208 (1987); see also *State* v. *Anonymous (83–FG),* 190 Conn. 715, 720, 463 A.2d 533 (1983); *State* v. *Huot,* 170 Conn. 463, 465, 365 A.2d 1144 (1976); B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 39, p. 178. Accordingly, contrary to the respondent's argument, the factual situation, together with this inference, supports the adjudication of larceny in the fourth degree based on an unlawful taking.[4]

## II

In his second claim, the respondent maintains that the trial court unconstitutionally restricted his right to cross-examine the complainant in the breach of the peace charge. Specifically, the respondent asserts that testimony as to the circumstances under which staff member incident reports are filed would have been probative in determining the credibility of the witness and in shedding light on what occurred between the witness and the respondent. Additionally, he asserts that testimony as to prior similar altercations between the witness and other patients would have been probative of the witness' credibility and whether the incident in question rose to the level of a breach of peace violation. We hold that there is no merit to this claim.

"The general rule is that if the defendant is permitted cross-examination sufficient to satisfy the sixth amendment, restrictions on the scope of the cross-examination are within the sound discretion of the trial court." *State* v. *Jackson,* 198 Conn. 314, 319, 502 A.2d

[4] Even were we to assume that the court did enlarge the petition, " '[w]here the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it.' *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978)." *State* v. *Geyer,* 194 Conn. 1, 17, 480 A.2d 489 (1984).

865 (1986); *State* v. *Vitale,* 197 Conn. 396, 402, 497 A.2d 956 (1985). We recognize that cross-examination for bias, interest or motive is a constitutionally protected right; nevertheless, cross-examination for other purposes or based on less vital forms of attack on credibility are deserving of less protection. *State* v. *Cosby,* 6 Conn. App. 164, 168, 504 A.2d 1071 (1986). "Every evidentiary ruling which denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error." *State* v. *Vitale,* supra, 403.

The issue before the court on the breach of the peace charge was whether the respondent, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, assaulted or struck another person. The line of questioning excluded by the trial court was, under the circumstances evident from the record, irrelevant to any aspect of the case or the complainant's credibility. "Although cross-examination should be liberally allowed, the trial court may restrict it to evidence which is competent, material and relevant." *State* v. *Jackson,* supra. The trial court did not abuse its discretion in restricting the respondent's cross-examination.

### III

The respondent's final claim of error concerns the court's conclusion that the respondent had violated the conditions of his probation. He claims that the court erred in finding the probation violation because the state failed to meet its burden of proof.

It is well established that "[u]nder Connecticut law a child may be found 'delinquent' if he or she has (1) violated any federal or state law or municipal or local ordinance, or (2) violated any order of the Superior Court. General Statutes § 46b-120." *In re Christopher V.,* 207 Conn. 270, 273, 540 A.2d 700 (1988).

In adjudicating the respondent delinquent for violating his probation by engaging in unlawful activities, the

trial court took judicial notice of this standard probation condition, as well as the entire juvenile file relating to the respondent, including the probation contract which the court had personally signed in October, 1986.[5] The respondent asserts that because the court took judicial notice of these facts, rather than requiring evidence from the state, the state failed to satisfy its burden of proof on this issue. We disagree.

The parole officer testified, without objection, that the respondent was placed on probation by the same trial court on October 31, 1986, to last until April 30, 1987. He further testified that a copy of the conditions of probation was furnished to the respondent at that time. Moreover, the trial court was entitled to take judicial notice of the files in juvenile proceedings. "The true concept of what is judicially known is that it is something which is already in the court's possession or, at any rate, is so accessible that it is unnecessary and therefore time wasting to require evidence of it. *State* v. *Main*, 69 Conn. 123, 136, 37 A. 80 [1897]. Judicial notice, therefore, in its appropriate field, meets the objective of establishing facts to which the offer of evidence would normally be directed. *DeLuca* v. *Park Commissioners*, 94 Conn. 7, 10, 107 A. 611 [1919]." *State* v. *Tomanelli*, 153 Conn. 365, 368, 216 A.2d 625 (1966); see also *In re Juvenile Appeal (84-7)*, 3 Conn. App. 30, 32, 484 A.2d 472 (1984) (where there was evidence before the trial court about child abuse, there

[5] The probation contract, dated October 31, 1986, contained the following conditions: "(1) To obey any federal or state law or local ordinance.

"(2) To attend school regularly and faithfully and to obey the rules and regulations established by said school.

"(3) To remain in the residence ordered by this court and to be directed and guided by the parents or other adult(s) charged with your care and supervision.

"(4) To keep all appointments scheduled with the probation officer.

"(5) Remain at Altobello and/or cooperate with further treatment plans."

The contract indicated that the respondent was furnished with a copy.

was no error in taking judicial notice of the same type of material in another commitment file); B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 26, p. 122.

Since there was sufficient evidence to support an adjudication for larceny in the fourth degree and breach of the peace, the trial court did not err in determining that the respondent had violated the conditions of his probation or in adjudicating him a delinquent.

There is no error.

In this opinion the other judges concurred.