[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Nature of Proceeding
In this proceeding, the Department of Children and Families (DCF) seeks to terminate the parental rights of Nersy C. and Alberto M. in their child Antonio M., born 6/30/91, who, since the age of 14 months, has been residing continuously in DCF foster care. Originally committed as neglected on 7/13/93, his commitment had twice been extended at the time this petition was filed on 4/21/97.
At the initial hearing on 5/20/97, service on the mother by certified mail was confirmed by a receipt signed at her address in New York City, where she had lived for the preceding three years. The father had been personally served at his place of incarceration in Connecticut. The father has been represented throughout these proceedings by the same attorney who represented him at the child's original commitment nearly two years earlier, and at every court hearing after that date. The appointment of the attorney who had represented the mother at that commitment hearing, and at the subsequent extension hearings, was not renewed for this proceeding in view of his inability to make contact with her despite repeated reasonable efforts to do so, not only throughout the preceding hearings relating to Antonio, but also concerning proceedings involving two of her other children which had culminated in the termination of her parental rights regarding them a full year before the institution of this action regarding Antonio. See In Re Saba P., 13 Conn. App. 605; Cert Denied 207 Conn. 811 (1988). The case was transferred from the Hartford Judicial District to the Child Protection Session for trial and disposition.
Findings
The court, having taken judicial notice of the prior record concerning this child in this court, and having examined the social study and the psychological evaluation of father and son, and heard the testimony of Social Worker Tovar, the foster mother, the evaluating psychologist, and the father himself, makes the following findings: CT Page 11250
1. Grounds to terminate parental rights on facts as of April 21,1997.[1]
As to the mother: The petitioner has established by the requisite clear and convincing proof that three grounds exist to terminate the parental rights of Nersy C.:
Abandonment — Antonio has been abandoned by his mother, not only in the statutory sense of a failure to "maintain a reasonabledegree of interest, concern or responsibility" but also, for the 15 months preceding the adjudicatory date of 4/21/97, in the common law sense of a total failure to initiate contact of any kind with either the child, his foster parent or his legal guardian, DCF.
Failure to Rehabilitate — Antonio's mother moved to New York City less than a year after his original placement in foster care in September of 1992, when he was 14 months old. Since January of 1994, she had had but a single contact with the child, in January of 1996. Whatever her life consists of in New York, she has chosen not to share any part of it with Antonio. Whether she remains drug addicted or not, whether she has a home of her own or not, whether she has remained at liberty or has been incarcerated for any portion of this period, is not known. What is known is that she has elected to stop any kind of contact with him and has never requested that he be placed with her in New York or anywhere else. She has thus manifested no more ability to resume care of the child than she did in September of 1992 when she permitted him to be placed so that she could receive drug treatment, or in July of 1993 when she did not contest his commitment to DCF.
No ongoing parent-child relationship and permitting further timein which to establish or reestablish such relationship would beinconsistent with the child's best interests — No clinical evaluation is required for a lay trier of facts to conclude that whatever relationship might presently exist between a now six-year old and his mother with whom he last lived five years ago and whom he has seen on but two brief occasions in the preceding three years, cannot be a "parent-child relationship" as defined in the statute as
 the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the CT Page 11251 physical, emotional, moral and educational needs of the child. Sec. 45a-717 (g), Conn. Gen. Stats. (Rev. 1995)
This lack of contact is ascribable more to the mother's having moved to another state and failing to request visitation than it is to the fact that the child had been removed by DCF to foster care for good reason. Her absence from the child's life since he was a year old, save for these two brief visits two years apart, permits the reasonable inference that there cannot be any positive memories of or feelings for his mother sufficient to defeat the clear intent of this statutory ground for terminating her parental rights. Cf. In Re Jessica M. 217 Conn. 459, 474-475
(1991), reiterating an interpretation of this statutory ground inIn Re Juvenile Appeal (Anon.), 177 Conn. 675 (1979); In ReValerie D., 223 Conn. 492 (1992); In Re Kelly S.,29 Conn. App. 600 (1992).
As to the father: Prior to trial, the petitioner withdrew one of the grounds for termination that had been checked on the petition: The denial of necessary care by acts of parental commission or omission. When the petitioner rested, the court dismissed two of the grounds as to the father: Abandonment,
because the evidence established that he visited on an average of monthly while between incarcerations, and soon after his most recent incarceration, a court-ordered psychological evaluation recommended against further visitation.; No ongoing parent-childrelationship . . . because the child knows Alberto is his father and does not have a negative reaction to visiting with him. In reJessica M., supra. The petitioner has, however, established by clear and convincing proof that one statutory ground does exist to terminate Alberto M.'s parental rights:
Failure to Rehabilitate. When his son was committed as neglected on 7/13/93, Alberto was incarcerated, anticipating an early release to the community. Among the expectations of the court articulated at the time (State's Exh 6) and endorsed by father and his counsel, were two focused on his past extensive criminal history: He was to have no further involvement with the criminal justice system and upon release was to cooperate with the conditions of his parole.
When Alberto was released from prison in 1994, Antonio was living with the paternal grandmother. Alberto moved into the same home, in which a paternal uncle also lived, and had frequent contact with his son until October of 1994 when Antonio was CT Page 11252 removed after another child in the home was found to have contracted a venereal disease. The child who had been molested named Alberto as the perpetrator, but no criminal charges have ever been brought. Alberto visited sporadically in the year following, accompanying his mother on her scheduled visits from time to time. He filed a petition to revoke the commitment while still living in his mother's home, notwithstanding that he had been arrested in July of 1995 for assault and again two months later for selling drugs. In connection with his revocation petition, the court ordered a psychological evaluation of father, son and their interaction (State's Exh. 4). Before that could be completed, however, Alberto was rearrested in December of 1995, and the following April was sentenced to 12 years, suspended after serving four with five years probation. At the time of giving his testimony on 10/8/97, Alberto was anticipating a parole hearing the following week which, if successful, would result in his release on probation in April of 1998. His immediate plan upon release would be to return to his mother's home, acknowledging that he had not yet rehabilitated from the problems resulting from his history of drug abuse, (which did not end, according to him, until after his incarceration, in 1996) sufficiently to begin caring for his son at that time. Instead, he offered various of his relatives as possible placements for his son, but those investigated (paternal grandmother and paternal aunt) were rejected because of histories of sexual abuse of children within those homes.
While the fact of incarceration alone is not grounds to terminate a parent's rights, In Re Shannon S., 41 Conn. Sup. 145
(1987), Alberto's rearrests two years after signing the court's expectations for reunification (State's Exh. 6) followed by the imposition of the longest sentence imposed upon him since 1991 (State's Exh 1), provides clear and convincing proof of his failure to rehabilitate as of the adjudicatory date of April 21, 1997. His sporadic displays of interest in his son, equally balanced by the absence of such displays — e.g. he could have visited weekly with his mother at the DCF office after Antonio's removal from the grandmother's home, but in fact averaged but one visit a month; he attended one treatment plan review held at the prison in March of 1996, but refused to attend another held the following October; after a prison visit in July of 1996 which went well, according to the DCF supervising case aide, Alberto did not request another in the following ten months prior to the adjudicatory date. CT Page 11253
Dr. Ronald Anderson, who had evaluated father and son just before Alberto's most recent incarceration, concluded that he did not present a realistic resource for raising this child to adulthood:
 Alberto does not present an adequate alternative for placement now or in the foreseeable future. Even if he were to make a serious effort to follow through with counseling, employment, parenting classes, substance abuse and domestic violence treatment, and stable independent housing, it would take many years before he could be considered a potential primary caretaker for Antonio. There is no evidence that he has made such an effort in the past, or that he will do so in the future. Certainly his current incarceration [December, 199] represents a significant setback to his self-improvement, and reflects his continued lack of judgment and maturity. Further visitation is likely to be very disruptive to Antonio's adjustment, and should be discontinued. Termination of parental rights should be considered, in the best interests of the child. At the very least, Albert should have no further contact with Antonio until he is able to demonstrate that he has adequately addressed the many concerns noted in this report. . . . (State's Exh. 4, last page.)
This opinion was rendered by Dr. Anderson in February of 1996. Two months later Alberto was sentenced to his present term of incarceration. DCF did nothing to pursue a permanent plan for this child for more than a year after imposition of that sentence, giving as a reason the necessity for checking into the relatives offered by Alberto as possible permanent homes. Since out of state relatives, if approved by the Interstate Compact, may adopt as well as act as foster parents, this delay of permanency of a full year in the life of this five-year old, who had by then already spent three-quarters of his life as a state ward, seems indefensible. In any case, the out of state relatives were not approved by the Interstate Compact (State's Exh. 3) because of a report of suspected sexual abuse of a niece by the paternal uncle, and an extensive delinquency record of a child in that family which necessitated his placement out of his home.
Conclusion: The state has provided clear and convincing evidencethat grounds exist to terminate the parental rights of bothparents of Antonio M.
CT Page 11254
2. Termination of his parents' rights is, by clear and convincing evidence, in Antonio's best interests as of the dispositional date of October 8, 1997.
Dr. Anderson, on October 7, 1997, reiterated the clear recommendation he had made to DCF twenty months earlier: Based upon the lack of any consistent effort on Alberto's part to establish himself in the community with regard to independent housing, stable relationships and sustained employment since 1993, and in the light of his most recent and most serious criminal offenses and resulting sentence, Dr. Anderson could not find that in the foreseeable future he would be able to rehabilitate himself sufficiently to parent this child. With a diagnosis of anti-social personality disorder which has a poor diagnosis for treatment and which encompasses risk factors for abuse of children, poor impulse control, inability to accept social structures, poor peer relations manifested by hostility and distrust toward others, it would take Alberto, by Dr. Anderson's estimate, "at least 10 years" to attain sufficient stability to parent his son. The psychologist found Antonio to be in great need of a stable home without further delay. Although the father-son interaction appeared positive, Alberto's inability to provide the stable home which his son requires makes continued visitation "highly disruptive to the child's sense of stability and security." It is therefore found to be in Antonio's best interests for his parents' rights to be terminated so that he may secure the permanent stable home that has been recommended for him for the past two years.
3. There is clear and convincing evidence to support the conclusion that reasonable efforts have been made to reunify this child with each parent.
Visitation has always been made available upon request. Both parents knew what was expected of them at the time of commitment in order to reunify with their son, and referrals to appropriate services were made when each parent was in a position to follow up on them. Neither parent has made any effort, beyond occasional visits, to fulfill these expectations or to follow through with the referred services: The mother moved out of state in 1993 and has only seen her son on two brief occasions since then; the father had much contact with Antonio when living in his mother's home in 1994, but after the child's replacement in a foster home in October of that year, although offered weekly visits, he did not visit more than approximately once a month until new criminal CT Page 11255 activity resulted in his being continuously incarcerated for nearly two years prior to the dispositional date of 10/8/97.
In addition to this finding, the court must also consider each of the seven factors set forth in Sec. 17a-112 (e):
1. No services could be offered to the mother who moved out of state three years before this termination action was initiated. In rare telephone contact, and on two personal encounters, the mother was reminded of the court's expectations for reunification that had been spelled out for her at the time of commitment. State's Exh. 5. She was never denied a requested visit.
2. See finding supra as to the reasonable efforts made by DCF to reunite this child with each parent.
3. No orders were imposed in this case except to attend court which the mother failed to do. While not orders, the expectations spelled out by the court for each parent at the time the child was committed nearly two years before this action was filed (State Exhs. 5 and 6) have been unfulfilled by each parent. Having chosen to remove to New York, the mother failed to visit the child or provide DCF with any information as to her drug treatment, housing or involvement with the criminal justice system. The father actually lived briefly in the same home as his son for a brief period between the end of his incarceration in 1994, and when the child was removed in October of 1994. Thereafter, for a year he could have visited every week, but chose to visit only one-fourth that often. At no time did he secure employment or a home of his own, remaining in his mother's home from which Antonio had been removed for cause by DCF. By his own admission, he continued to use drugs, at least until his most recent incarceration. Most significantly, he was further involved with the criminal justice system with more serious offenses (drug sales) resulting in a sentence to a longer period of incarceration than had been imposed in the preceding eight year.
4. Antonio, on the dispositional date, had been continuously placed out of his parents' care for the preceding five years. He has developed strong ties to his present foster home, after receiving good, consistent care there over the past three years. He continues to have strong ties as well with a CT Page 11256 former foster mother who visits him and who is interested in adopting him. His biological mother, were he to see her after the 19 months since she last visited him, would be a stranger to him. Visits with his father are not upsetting to him, and he appeared to enjoy his most recent prison visit over a year ago, but such visits were strongly counter indicated by the evaluating psychologist since they serve only to confuse him as to his primary caretaker.
5. Antonio turned six between the adjudicatory date (April 21, 1997) and the dispositional date (October 8, 1997). He is now in full-time school for the first time and should not have to be uncertain any longer as to his permanent caretakers. He has been a state ward for all but fourteen months of his life, and should have to wait no longer for either parent to come forward with a realistic plan for the resumption of his care.
6. Since the mother has chosen to live in New York for nearly all of the time her son has been in state custody, it is unknown what efforts she may have been making there to stabilize her life, control her drug habit, remain free of criminal court involvement and secure a stable place to live. What is known is that she has offered none of these things toward the care of her son. The father, during the period he was at liberty, saw Antonio often when they both lived in the home of the paternal grandmother, and after the child's removal, continued to see him approximately monthly. But he did nothing to avoid a further, and more serious, involvement with the criminal justice system, or to comply with the conditions of his release so that he could remain in the community and available to his son. He offered no evidence of any legal source of income or any place to live other than the home of his mother who had abused him in his childhood and in whose home another child had been sexually abused. While he may, if he can avoid disciplinary problems in prison, be eligible for parole in April of 1998, it would be an indefinite period of as long as a decade before he would evidence any likelihood of being able to parent this child in a satisfactory manner.
7. No one prevented either parent from maintaining a meaningful relationship with this child. The mother removed herself by moving out of state. The father removed himself by committing a serious criminal offense and being made subject to a long CT Page 11257 sentence. Restricting prison visits, had they been requested, would not be deemed unreasonable in view of the uncontradicted written recommendation of Dr. Anderson in February of 1996 (State's Exh 4) and in his testimony 20 months later.
Judgment and Orders:
Having considered the foregoing factors, and having made the findings above as to grounds for termination and the best interests of the child, it is hereby ordered that the parental rights of Nersy C. and Alberto M. in and to their child Antonio M. be, and hereby are terminated. And it is further ordered that the Commissioner of the Department of Children and Families be, and hereby is, appointed Statutory Parent for the purpose of securing a permanent home for this child, preferably in adoption if a family suitable to meet this child's needs can be found. To secure this end, it is further ordered that the said Commissioner shall submit a written report as to the progress toward such a permanent home no later than 90 days following the date of this judgment, and another such report six months thereafter. If adoption has not been finalized by November 15, 1998, the said Commissioner is further ordered to submit a Motion for Review of Plan for Terminated Child to be scheduled for hearing not later than February 4, 1998. Until adoption is finalized, any decision as to visitation between this child and his parents or other relatives shall be made by DCF in consideration only of the child's best interests.
Dated at Middletown, Connecticut this 4th day of November, 1997
BY THE COURT
Frederica S. Brenneman, State Judge Referee